## Commonwealth *v.* Santana, Appellant.

184

Argued December 10, 1969. Before WRIGHT, P. J.,
WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING,
and CERCONE, JJ.

*Bernard L. Segal,* with him *Needleman, Needleman,
Segal & Tabb,* for appellant.

*James D. Crawford,* Assistant District Attorney,
with him *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., March 19, 1970:

Appellant was tried on charges of conspiracy and
receiving stolen goods. At the trial below before Judge
REIMEL, sitting without a jury, appellant was found
guilty of conspiracy to aid in the disposition of stolen
goods.[1] Appellant's motions in arrest of judgment and

---

[1] Demurrers were sustained on three bills charging receiving
stolen goods and appellant was found not guilty on the fourth.

for a new trial were denied. The sole issue before us is the sufficiency of the evidence to support the conspiracy conviction.

In testing the sufficiency of the evidence after a verdict of guilty the evidence must be read in the light most favorable to the Commonwealth. *Commonwealth v. Lawrence,* 428 Pa. 188, 236 A. 2d 768 (1968); *Commonwealth v. Burns,* 409 Pa. 619, 187 A. 2d 552 (1963); *Commonwealth v. Hayes,* 205 Pa. Superior Ct. 338, 209 A. 2d 38 (1965). Viewed in this light the facts are as follows: A Philadelphia cigar manufacturer, by whom the appellant was at one time employed, had established a sales promotion program whereby its customers could obtain merchandise in exchange for certain amounts of bands removed from the cigars they purchased. On October 17, 1967, the subsidiary company which administered the premium distributions received an envelope containing several hundred cigar bands and a request for certain merchandise. The bands had never been on any cigars and were in fact stolen from the manufacturer. The return address on the envelope as well as the premium request form had the name "Pearl Santaner" inscribed on them, although the address on both these items was that of the appellant, Perrie Santana. The police and postal officials were notified of this request and arrangements were made to arrest the recipient upon delivery and acceptance of the merchandise. When the packages containing the premium merchandise were delivered appellant signed for them and took them into her house, whereupon the police moved in and made the arrest.

At the time of the arrest, appellant denied any knowledge of stolen bands and said that she did not request the packages which she had just accepted. Appellant further stated that her mother previously informed her that she would be receiving the packages and to keep them until her mother came for them. Ap-

pellant admitted that on previous occasions she had
received cigar bands from her mother and her uncle,
both of whom were at one time employees of the cigar
manufacturer, and that she had used those bands to
obtain premium merchandise. There was no evidence,
however, that those bands had been stolen.[2] The plant
manager for the cigar manufacturer testified that, al-
though records were maintained concerning the num-
ber of bands used by employees, there was no record
that either appellant or her mother had ever taken any
bands.

Expert testimony concerning the handwriting on the
premium request forms and the envelope in which they
were sent was introduced by both sides. The Common-
wealth's expert testified that, in his opinion, this was
the disguised handwriting of the appellant. On the
other hand, appellant's expert testified that this could
not be appellant's handwriting. The court below ac-
cepted the testimony of the Commonwealth's expert.

Although the original conspiracy indictment stated
that the conspirators were "other persons whose names
are . . . unknown,"[3] at the trial the Commonwealth
moved for and was granted permission to add the name
of Jessie Whitfield, appellant's mother, as a conspira-
tor.

We find that the evidence viewed in the light most
favorable to the Commonwealth does not support the
conspiracy conviction. The standard which that evi-
dence must meet is clear: "[E]vidence to sustain a
charge of conspiracy must be 'such as reasonably and
naturally justifies an inference of guilt of the accused
and is of such volume and quality as to overcome the

---

[2] Indictments for receiving stolen goods to which demurrers
were sustained referred to those occasions.

[3] Conspiracy indictments are proper even though they do not
name a conspirator. See *Commonwealth v. Cohen*, 203 Pa. Superior
Ct. 34, 199 A. 2d 139 (1964).

presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt. . . . A conviction will not be allowed to stand if it is based solely upon suspicions and conjectures.' " *Commonwealth v. Yobbagy,* 410 Pa. 172, 176-77, 188 A. 2d 750, 752 (1963); *Commonwealth v. Schwartz,* 210 Pa. Superior Ct. 360, 381, 233 A. 2d 904, 914 (1967); *Commonwealth v. Evans,* 190 Pa. Superior Ct. 179, 201-02, 154 A. 2d 57, 71 (1959). While it is true that "a conspiracy may be inferentially established by showing the relation, conduct or circumstances of the parties. . . ." *Commonwealth v. Rosen,* 141 Pa. Superior Ct. 272, 276, 14 A. 2d 833, 834 (1940), such circumstantial evidence must meet the standard set out above.

An essential element of a conspiracy is the participation of two or more persons. *Commonwealth v. Neff,* 407 Pa. 1, 179 A. 2d 630 (1962); *Commonwealth v. Horvath,* 187 Pa. Superior Ct. 206, 144 A. 2d 489 (1958). The heart of the offense is a common understanding or agreement. *Commonwealth v. Yobbagy,* supra, and *Commonwealth v. Schwartz,* supra. Even giving the Commonwealth the benefit of all favorable testimony and all reasonable inferences therefrom, the evidence fails to show any understanding or agreement regarding the stolen cigar bands between appellant and her mother or between appellant and anyone else.

The admitted possession of stolen cigar bands might raise an inference that appellant was guilty of receiving stolen goods, but by itself it raises no inference of conspiracy. Nor does the appellant's testimony that her mother sent in the stolen bands and told her to sign for the merchandise aid the Commonwealth. Had the trier of facts given some credence to the appellant's statement it would be some evidence of confederation. But, unlike a jury's verdict, we have the judge's finding that the order with the stolen bands was placed by

appellant herself. We are bound by that finding which precludes any inference to the contrary.

That appellant on prior occasions received cigar bands from her uncle and her mother and sent in for premiums gives no ground to infer that on the occasion charged she acted in concert with her uncle or mother. There was no evidence whatsover that the cigar bands sent in on previous occasions were stolen. Absent some evidence they were stolen, it is unreasonable to infer that sending in two apparently legitimate premium claims is a pattern or course of conduct showing a conspiracy to later send in an unlawful claim.

In short, we are of the opinion that the evidence raises a suspicion of conspiracy, but falls short of proving the same beyond a reasonable doubt.

The judgment of the court below is reversed and the defendant is discharged.

MONTGOMERY, J., concurs in the result.

WRIGHT, P. J., would affirm on the opinion of President Judge REIMEL.