Commonwealth *v.* Jones, Appellant.

Submitted November 11, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Michael J. Perezous,* and *Xakellis, Perezous & Mongiovi,* for appellant.

*Henry J. Rutherford,* First Assistant District Attorney, and *Clarence C. Newcomer,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, December 30, 1971:

On September 9, 1930, following a trial by jury, appellant Robert C. Jones was convicted of first degree murder. He was sentenced to life imprisonment. No post-trial motions were filed nor was a direct appeal taken.

In 1967, appellant filed a PCHA petition,[1] alleging that he was denied his constitutional right of appeal under *Douglas*[2] because his privately retained counsel failed to inform him of such a right.[3] The hearing court found that appellant had knowingly waived his

---

[1] Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. §§1180-1 et seq. (Supp. 1971).

[2] *Douglas v. California,* 372 U.S. 353, 83 S. Ct. 814 (1963).

[3] Appellant also alleges that he was entitled to a new trial because the trial notes of testimony were not transcribed and the court reporter had died, leaving him without a record for appeal. Because of our disposition on appellant's first contention we need not reach the issue presented by the unavailability of the trial transcript.

right to appeal and denied relief.[4] This appeal followed.

Appellant argues on this appeal that the hearing court improperly placed upon appellant in this silent record case the burden of demonstrating that his failure to exercise his *Douglas* rights was not knowing and intelligent. We agree with appellant that such an allocation of the burden of proof offends the constitutionally mandated federal standards of waiver, and accordingly we vacate the order of dismissal and remand for a hearing consistent with this opinion.

It is firmly and definitively established that this defendant has a constitutionally-guaranteed right of access to the appeal process. That right, established by *Douglas v. California,* was made fully retroactive in *Smith v. Crouse,* 378 U.S. 584, 84 S. Ct. 1929 (1964) (per curiam) ; *Commonwealth ex rel. Stevens v. Myers,* 419 Pa. 1, 213 A. 2d 613 (1965).

Thus the dispositive issue here is whether the defendant effectively waived his constitutional right of appeal. And since a federal constitutional right is involved, federal standards of waiver must be applied. *Fay v. Noia,* 372 U.S. 391, 439, 83 S. Ct. 822, 849 (1963) ; *Rice v. Olson,* 324 U.S. 786, 791, 65 S. Ct. 989, 992 (1945).

The federal standards of waiver that control this case are quite explicit. In *Johnson v. Zerbst,* 304 U.S. 458, 58 S. Ct. 1019 (1938), the United States Supreme Court held that the waiver of a constitutional right

---

[4] The hearing judge alternatively concluded that appellant waived his right to advance either of the above mentioned issues because they were not raised in an earlier 1966 habeas corpus petition. That result is contrary to this Court's decision in *Commonwealth v. Cannon,* 442 Pa. 339, 275 A. 2d 293 (1971), where we held that the waiver provisions of the Post Conviction Hearing Act do not apply retroactively to habeas corpus proceedings instituted prior to the effective date of the Act.

must be "intelligent and knowing." Amplifying that decision the Supreme Court ruled in *Carnley v. Cochran,* 369 U.S. 506, 82 S. Ct. 884 (1962) that: ". . . [p]resuming waiver from a silent record is impermissible. The record must *show,* or there must be an allegation and evidence which show, that an accused was *offered* counsel but *intelligently* and *understandingly* rejected the offer. Anything less is *not* a waiver." (Emphasis added.) Id. at 516, 82 S. Ct. at 890. Thus we are constitutionally unable in silent record cases to place upon petitioner the burden of demonstrating that his failure to exercise his *Douglas* rights was not knowing and intelligent since this would be "[p]resuming waiver from a silent record."

This Court has specifically recognized that we are constitutionally compelled to apply the above described federal standards of waiver. In *Commonwealth v. Wilson,* 430 Pa. 1, 241 A. 2d 760 (1968), this Court held that ". . . the burden of demonstrating a waiver . . . where, as here, the record is silent . . . is placed upon the Commonwealth. . . ." Id. at 3, 241 A. 2d at 762. And we have followed our holding in *Wilson* in numerous other cases. See, e.g., *Commonwealth v. Norman,* 447 Pa. 217, 285 A. 2d 523 (1971) ; *Commonwealth v. Robinson,* 442 Pa. 512, 276 A. 2d 537 (1971) ; *Commonwealth v. Sprangle,* 442 Pa. 271, 275 A. 2d 114 (1971) ; *Commonwealth ex rel. Johnson v. Rundle,* 440 Pa. 485, 270 A. 2d 183 (1970) ; *Commonwealth v. Gist,* 433 Pa. 101, 249 A. 2d 351 (1969) ; *Commonwealth v. Zaffina,* 432 Pa. 435, 248 A. 2d 5 (1968) ; *Commonwealth v. Ritchey,* 431 Pa. 269, 245 A. 2d 446 (1968) ; *Commonwealth v. Mumford,* 430 Pa. 451, 243 A. 2d 440 (1968) ; *Commonwealth v. Tolbert,* 430 Pa. 167, 242 A. 2d 265 (1968) ; *Commonwealth v. Stewart,* 430 Pa. 7, 241 A. 2d 764 (1968).

The federal standards of waiver continue to apply irrespective of whether the individual who seeks to vin-

dicate his *Douglas* rights was represented by court-appointed or private counsel. In *Commonwealth v. Ezell*, 431 Pa. 101, 244 A. 2d 646 (1968), this Court was confronted with the suggestion that in post-*Douglas* cases involving privately retained counsel at trial the burden should be on the defendant to show the absence of a constitutionally valid waiver. This Court specifically rejected that argument and held: "Nor do we think that the requirements of Wilson and Stewart become relaxed simply because appellant was able to afford private trial counsel." Id. at 104, 244 A. 2d at 647. The constitutionally mandated result we reached in *Ezell* has even more compelling force in this instance, because the trial in 1930 predates *Douglas* by over three decades. The gross unfairness and manifest unreality in presuming in this 1930 case a waiver of a constitutional right that was not announced until a third of a century later is strikingly self-evident. As this Court said in *Commonwealth v. Cheeks*, 429 Pa. 89, 239 A. 2d 793 (1968) : "It would be manifestly unfair to hold appellant to a waiver when this waiver is alleged to have occurred at a time when neither the defendant nor his attorney had any way of knowing that there existed a right to be waived." Id. at 95, 239 A. 2d at 796. See also *O'Connor v. Ohio*, 385 U.S. 92, 87 S. Ct. 252 (1966) ; *Commonwealth v. Baity*, 428 Pa. 306, 237 A. 2d 172 (1968).

We must reject in this pre-*Douglas* case, as we did in the post-*Douglas* case of *Ezell*, the suggestion that the burden of proving waiver should shift to the defendant because he retained private counsel at trial. It is clear that for the purposes of allocating the burden of proving waiver of the right of appeal, whether a defendant was represented by court-appointed or private counsel is a distinction without legal significance. As the ABA Standards for Criminal Justice point out,

"Once a lawyer has undertaken the representation of an accused his duties and obligations are the same whether he is privately retained, appointed by the court, or serving in a legal aid or defender system." ABA Project on Minimum Standards for Criminal Justice, Standards Relating to The Prosecution Function and The Defense Function, §3.9 (The Defense Function) (Approved Draft, 1971).

Moreover any attempt to arbitrarily distinguish between court-appointed and privately retained counsel creates grave constitutional and public policy problems. To remove the burden of proof from the Commonwealth and place it instead upon the defendant who retains private counsel at trial is as repugnant to the equal protection clause as was the invidious discrimination against indigents that *Douglas* required be eliminated. *Douglas* guaranteed that an indigent defendant would have the same access to the appeal process as the nonindigent defendant. To place a substantially more onerous burden on a defendant with privately retained counsel than a defendant with court-appointed counsel creates an inverse discrimination that favors defendants with court-appointed counsel. The United States Supreme Court held that such inverse discrimination violates the equal protection clause: "The State is not powerless to enforce judgments against those financially unable to pay a fine; *indeed, a different result would amount to inverse discrimination since it would enable an indigent to avoid both the fine and imprisonment for nonpayment whereas other defendants must always suffer one or the other conviction. . . .*" (Emphasis added.) *Tate v. Short,* 401 U.S. 395, 399, 91 S. Ct. 668, 671 (1971) quoting from *Williams v. Illinois,* 399 U.S. 235, 244-245, 90 S. Ct. 2018, 2024 (1970). In addition, a purported distinction would tend to discourage defendants of marginal means from retaining private

counsel. It would be to their advantage to seek court-appointed counsel and with such counsel then enjoy the favorable burden of establishing waiver not equally available to a defendant with self-retained counsel.

In applying the constitutional principles of waiver required by *Johnson v. Zerbst* and *Carnley v. Cochran,* our determination today is completely consistent with this Court's previous decisions making it incumbent upon the Commonwealth to establish waiver in silent record cases. See *Commonwealth v. Norman,* supra; *Commonwealth v. Wilson,* supra; *Commonwealth v. Cheeks,* supra; *Commonwealth ex rel. O'Lock v. Rundle,* 415 Pa. 515, 204 A. 2d 439 (1964). In addition the result we reach today is clearly in harmony with the consensus of the Circuit Courts of Appeals who have addressed the issue: "We think the only practical, logical and fair interpretation to be given to Douglas v. California is that it imposes upon the state a duty to warn every person convicted of crime of his right to appeal and his right to prosecute his appeal without expense to him by counsel appointed by the state, if he is indigent." *United States ex rel. Smith v. McMann,* 417 F. 2d 648, 654 (2nd Cir. 1969); *Williams v. Coiner,* 392 F. 2d 210 (4th Cir. 1968); *Wynn v. Page,* 369 F. 2d 930 (10th Cir. 1966).[5] Furthermore, our holding here is entirely consistent with the position taken by the Third Circuit Court of Appeals in *United States ex rel. O'Brien v. Maroney,* 423 F. 2d 865 (3d Cir. 1970). The court there repeatedly emphasized its

---

[5] Rule 32(a)(2) of the Federal Rules of Criminal Procedure states: "Notification of Right to Appeal. After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of his right to appeal and of the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal in forma pauperis. If the defendant so requests, the clerk of the court shall prepare and file forthwith a notice of appeal on behalf of the defendant."

finding that *on the record* the defendant "had knowledge of his right of appeal" and "agreed with and acquiesced in his counsel's decision not to file an appeal." That factual finding is diametrically opposed to the record before this Court. Instead the defendant here, unlike the defendant in *O'Brien,* alleges that he was unaware of his constitutional right of appeal and *the record in no sense refutes that allegation.*

The landmark United States Supreme Court decision of *Fay v. Noia,* 372 U.S. 391, 83 S. Ct. 822 (1963), offers a parallel setting that demonstrates the correctness of the result we reach today. In *Fay* the Supreme Court was presented with a defendant who had retained private counsel in a pre-*Douglas* trial. The issue before the Court was whether the defendant had "deliberately by-passed" his right of appeal. In analyzing the problem of deliberate by-pass the Court explicitly compelled the application of federal standards for determining waiver of a constitutional right: "The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461—'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures then it is open to the federal court on habeas to deny him all relief. . . . At all events we wish it clearly understood that the standard here put forth depends on the *considered choice* of the petitioner." (Citations omitted) (Emphasis added). Id. at 439, 83 S. Ct. at 849.

The constitutional principle announced in *Fay* is that for a defendant to waive his right of appeal the

record must disclose that the defendant's "considered choice" was "an intentional relinquishment or abandonment of a known right or privilege." *Fay's* requirement that a waiver of a constitutional right, if it is to be effective, must be the "considered choice of the petitioner," further demonstrates the irrelevancy of whether a defendant was represented by private or court-appointed counsel. In accord is the ABA Standards which unequivocally state that "[t]he decision whether to appeal must be the defendant's own choice." ABA Project on Minimum Standards for Criminal Justice, Standards Relating to The Prosecution and The Defense Function, §8.2 (Approved Draft, 1971). See also ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Criminal Appeals, §3.2 (Approved Draft, 1970). Such a constitutionally mandated standard must be applied to the case at bar.

Finally, it is evident that adherence to our constitutional obligation to place the burden of proving waiver on the Commonwealth in situations such as this one can only advance the search for truth in the administration of criminal justice. The review accorded by an appeal is as much at the heart of the guilt-determining process as is the verdict of the jury and the judgment of the court. Following our constitutional obligation assures that no defendant, solely because he was unaware of his right to appeal, is prevented from securing appellate review of his conviction. This Court has invariably sustained a defendant's constitutional right of appeal where it was determined that he was unaware of his *Douglas* rights. See, e.g., *Commonwealth v. Davis*, 433 Pa. 267, 249 A. 2d 766 (1969); *Commonwealth v. Zaffina*, 432 Pa. 435, 248 A. 2d 5 (1968); *Commonwealth v. Johnson*, 431 Pa. 522, 246 A. 2d 345 (1968); *Commonwealth v. Mumford*, 430 Pa. 451, 243 A. 2d 440 (1968); *Commonwealth v. Sapp*, 428 Pa.

377, 238 A. 2d 208 (1968) ; *Commonwealth ex rel. Light v. Cavell,* 422 Pa. 215, 220 A. 2d 883 (1966). Surely this Court's adherence to constitutionally mandated principles has not in any way diminished the effectiveness of the administration of criminal justice.

On remand if the Commonwealth is unable to establish that defendant waived his *Douglas* rights, defendant is entitled only to direct appeal as though timely filed, not to a new trial or to discharge from imprisonment. If upon such appellate review it is determined that the judgment of sentence was legally correct, the conviction remains undisturbed. If, on the other hand, appellate review discloses error that requires a new trial society is equally served by the correction of injustice.

Accordingly, the order is vacated and the record remanded for proceedings consistent with this opinion.

Mr. Justice COHEN took no part in the decision of this case.

_____

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

The decision of the Majority in this 1930 murder case is, to me, incomprehensible. In 1930, appellant-petitioner, *while represented by counsel* was found guilty by a jury of murder in the first degree and was sentenced to life imprisonment. No post-trial motions were filed, nor was any appeal taken. Appellant made no contention and offered no proof at his trial that he was indigent—it is obvious that he couldn't have.

Thirty-seven years later, viz., in 1967, appellant, *while represented by counsel,* filed a P.C.H.A. petition for a new trial because (he alleged) his privately-retained trial counsel failed to inform him of his constitutional right of appeal under *Douglas v. California,* 372 U.S. 353. In this, his present P.C.H.A. petition, appellant did not allege post-trial indigency, nor did he at-

tempt to prove at the P.C.H.A. hearing—where he had another attorney—that he could not afford counsel in this appeal. The hearing Court found that appellant had knowingly waived his right to appeal and denied relief. In the light of this record, the Majority of this Court now vacate the lower Court's Order of Dismissal and remand for a hearing as to whether the sentence was "legally correct" and place the burden of proving this upon the Commonwealth.

How the Commonwealth could prove this 41 years later, i.e., that appellant was not indigent in 1930 when he was represented by counsel and was not informed or cognizant of his right of appeal until 1967, when the Judge and witnesses are either dead or cannot be found, or undoubtedly will be unable to remember specific details in this case, is so unrealistic as to be beyond my comprehension.

To release this murderer 41 years after he committed the murder, because, although represented by counsel, he allegedly was not cognizant of his constitutional rights is not only unjustifiable to the law-abiding people of the Commonwealth, but likewise very unfair and very costly and very dangerous. Such decisions, especially when applied retroactively, will greatly increase the financial cost in every criminal case and will multiply the enormous Court backlog. Furthermore, it will unfairly and unwisely delay Justice for all other persons (criminals and accused alike) seeking a Constitutionally-ordained speedy public trial in criminal cases.

It is important to note in this connection that the test for retroactivity and the effect of retroactivity upon the administration of justice is set forth in *Desist v. United States,* 394 U.S. 244, 249;* *Stovall v. Denno,*

---

*In *Desist v. United States,* 394 U.S., supra, the Court said (pages 248-249) :

388 U.S. 293, 297; *Johnson v. New Jersey*, 384 U.S. 719, 726-727; *Commonwealth v. Richbourg*, 442 Pa. 147, 275 A. 2d 345; *Commonwealth v. Godfrey*, 434 Pa. 532, 254 A. 2d 923;** *Commonwealth ex rel. Stevens v. Myers*, 419 Pa. 1, 213 A. 2d 613; and these cases would prohibit retroactive application in this case.

To grant this appellant another hearing is so unfair to the safety of the law-abiding public and to countless other persons accused of crime that it will be catastrophic to the administration and application of justice and of the constitutionally-granted right to a speedy public trial.

---

"[3] Ever since Linkletter v. Walker, 381 U.S. 618, 629, 85 S. Ct. 1731, 1737, 14 L. Ed. 2d 601, established that 'the Constitution neither prohibits nor requires retrospective effect' for decisions expounding new constitutional rules affecting criminal trials, the Court has viewed the retroactivity or nonretroactivtiy of such decisions as a function of three considerations. As we most recently summarized them in Stovall v. Denno, 388 U.S. 293, 297, 87 S. Ct. 1967, 1970, 18 L. Ed. 2d 1199;

" 'The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards and (c) the effect on the administration of justice of a retroactive application of the new standards'."

** The Court said (page 535): " '. . ., we must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' (381 U.S. at 628, 629) The considerations which should be weighed in the balance in determining whether a decision should be applied prospectively only were spelled out in greater detail by the Court in Johnson v. New Jersey, 384 U.S. 719, 16 L. Ed. 2d 882 (1966), holding that Escobedo v. Illinois, 378 U.S. 478, 12 L. Ed. 2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), would not be applied retroactively. In Johnson, the Court stated, 'We must look to the purpose of our new standards governing police interrogation, the reliance which may have been placed upon prior decisions on the subject, and the effect on the administration of justice of a retroactive application of Escobedo and Miranda.' (384 U.S. at 727.)"

Once again I ask, "Is there never to be an end to a conviction and sentence of murder (or to a major felony conviction), when everyone in the United States knows that the colossal Crime Wave is increasing to such a degree as to be of Himalayan proportions?"*** No wonder (1) the Courts are bogged down with mountainous backlogs of criminal cases and (2) a large majority of crimes are perpetrated by convicted criminals who have been placed upon probation or released from jail on Judicially-created rights made of straw!

I vehemently dissent.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

The record in this case does not show that appellant was indigent at the conclusion of his 1930 trial; in his present PCHA petition appellant did not allege post-trial indigency, nor did he undertake to prove at the PCHA hearing that he could not afford appellate counsel. Accordingly, for the reasons set forth in my opinion in *Commonwealth v. Norman*, 447 Pa. 217, 285 A. 2d 523 (1971) (concurring and dissenting opinion), I believe that appellant is not protected by the constitutional mandate of *Douglas v. California*, 372 U.S. 353, 9 L. Ed. 2d 811 (1963) and that it should be his burden to prove that he did not knowingly waive his right to appeal.

Moreover, the majority's reliance on *United States ex rel. Smith v. McMann*, 417 F. 2d 648 (2nd Cir. 1969) and *Williams v. Coiner*, 392 F. 2d 210 (4th Cir. 1968) appears to be misplaced. In neither case did those federal courts of appeals give *Douglas* the unwar-

---

*** See the *Uniform Crime Report* compiled by the Federal Bureau of Investigation and released on December 29, 1971. See also, the report of the crimes committed in Philadelphia as detailed in The Philadelphia Inquirer, December 30, 1971, which are far more numerous and far worse.

rantedly broad reading which this Court now proclaims; indeed, both opinions, like that of the Fifth Circuit in *Pate v. Holman,* 341 F. 2d 764 (5th Cir. 1965), and that of the Third Circuit in *United States ex rel. O'Brien v. Maroney,* 423 F. 2d 865 (3d Cir. 1970) clearly link *"Douglas* rights" to a defendant's post-trial indigency.

I respectfully dissent.