Commonwealth *v.* Fryberger, Appellant.

128

Submitted June 10, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*William N. Sterling,* for appellant.

*F. Ned Hand* and *Timothy H. Knauer,* Assistant District Attorneys, and *William H. Lamb,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., February 27, 1975:

This is an appeal from the lower court's order denying the relief requested by appellant in his PCHA[1] petition. Appellant's principal contention is that he did not knowingly and understandingly waive his right to file post-trial motions. Because we agree with appellant, we remand this case to the lower court and permit appellant to file such motions nunc pro tunc.

The record reveals that appellant was charged with playfully or wantonly pointing and discharging a firearm, assault and battery (two counts), rape (four counts), and adultery (four counts). Appellant's first trial which was held in May of 1972 ended in a mistrial. At the conclusion of appellant's second trial which was held in September of 1972, the jury found appellant guilty on all four counts of adultery but acquitted him of the other charges. No post-trial motions were filed by appellant's privately-retained counsel. Nonetheless, appellant filed a direct appeal with this Court.[2] That appeal was affirmed per curiam without opinion. *Commonwealth v. Fryberger,* 226 Pa. Superior Ct. 707, 308

---

[1] Post Conviction Hearing Act of January 25, 1966, P.L. (1965) 1580, §§1 *et seq.,* 19 P.S. §§1180-1 *et seq.* (Supp. 1974-75).

[2] Because no post-trial motions concerning any alleged trial errors were filed, the only issue argued on appeal was the length of the sentence.

A. 2d 108 (1973). On November 13, 1973, appellant filed a PCHA petition in which he alleged, among other things, that he did not knowingly and understandingly waive his right to file post-trial motions. After an evidentiary hearing in which appellant and his trial counsel testified, the lower court dismissed the petition. This appeal followed.

The notes of testimony of the PCHA hearing reveal that soon after the second trial, appellant's trial counsel considered the propriety of filing post-trial motions. Counsel eventually came to the conclusion that post-trial motions would be fruitless and related this to appellant. No post-trial motions were filed.

In *Commonwealth v. Grillo*, 208 Pa. Superior Ct. 444, 448, 222 A.2d 427, 429 (1966), our Court recognized: "[A]n accused is entitled to the assistance of counsel in the critical task of taking and perfecting an appeal, unless such right is intentionally and intelligently relinquished. . . . The failure to file [post-trial] motions within the time prescribed by court rule may bar a subsequent appeal by defendant [or limit the arguable issues]. Thus, a defendant's right to the assistance of counsel in properly perfecting his appeal must, of necessity, include counsel's assistance in the filing of post-trial motions. Consequently, . . . counsel's personal conclusion that the filing of post-trial motions is unwarranted should not foreclose a defendant's right to representation on such motions. Moreover, the decision not to file such post-trial motions, no less than the decision not to file the appeal itself, requires the defendant's intelligent and understanding appreciation of the consequences of such action." In *Grillo,* this Court remanded the case to the lower court with directions to hold an evidentiary hearing to determine the circumstances surrounding appellant's failure to file post-trial motions.

In the present case, an evidentiary hearing was held at which appellant testified that he was not told what would happen if no post-trial motions were filed or that the failure to file post-trial motions would waive trial errors. Although appellant's trial counsel testified that appellant agreed with his decision not to file post-trial motions, counsel never testified that he advised appellant of the consequences of the failure to file such motions. When this question was asked: "Isn't it true you didn't tell him by not filing his motions he forever gave up his right to appeal upon the merits?", appellant's trial counsel responded: "I can't recall that being discussed." Thus, appellant's claim that he did not understandingly waive his right to file post-trial motions is supported by the record.

The lower court stated: "We cannot say that defendant did not knowingly and understandingly waive this right [to file post-trial motions]." However, this does not answer the question before us. A "waiver" is "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938). Thus, if waiver occurred it should be determined affirmatively, not negatively as was done by the court below.

There was nothing on the record in the present case to indicate that appellant had been informed by the court of the consequences of his failure to file post-trial motions. The burden of proving waiver of the right to appeal is on the Commonwealth in silent record cases where the defendant was represented by private counsel or by court-appointed counsel. *Commonwealth v. Jones,* 447 Pa. 228, 286 A.2d 892 (1971). Similarly, where the record is bare of any instructions to appellant as to his right to file post-trial motions, the burden of establishing waiver falls on the Commonwealth. See *Commonwealth v. Matcheson,* 215 Pa. Superior Ct. 371, 259 A.2d 174 (1969) (dissenting opinion).

The Commonwealth in this case has failed to meet its burden. The testimony of both appellant and his trial counsel establishes that appellant was unaware of the consequences of the decision not to file post-trial motions. Moreover, the record does not indicate that appellant was advised by the lower court of the effect of the failure to file such motions.

Order reversed and case remanded with instructions that appellant be permitted to file post-trial motions nunc pro tunc.

--------

DISSENTING OPINION BY VAN DER VOORT, J.:

I respectfully dissent.

In my view, the Commonwealth satisfied its burden of proof and the appellant should not be permitted to file post-trial motions nunc pro tunc. The record shows that appellant was well represented at trial by capable private counsel. The same attorney represented Fryberger at the post-trial motion stage of this case.

At the PCHA hearing both Fryberger and his trial counsel testified concerning the decision not to file post-trial motions. The appellant (who, incidentally, was a Chief of Police, and presumably well versed in the ways of criminal justice) testified to the following:

(1)  He *knew* he had *seven days* to file post-trial motions for arrest of judgment or a new trial.

(2)  He *knew* of his need to file an appeal *within seven days* to test possible mistakes in the trial judge's rulings or to test the proprieties of the District Attorney's actions in order to get a new trial.

(3)  He did not want to file post-trial motions because he figured he would receive a suspended sentence and then try to show perjury by witnesses who testified against him (apparently in a collateral post-conviction appeal). Trial counsel testified he discussed the decision not to file post-trial motions with the appellant

twice within the seven day period following the verdict. He testified further that Fryberger agreed with his conclusion that there were no trial errors which could arguably support successful post-trial motions.

On the basis of the testimony recited above, I find it inconceivable that the Majority would conclude that Fryberger was "unaware of the consequences of the decision not to file post-trial motions." If Fryberger *knew* he had *only seven days* to exercise his right to test the possible errors and improprieties existent in his trial, it defies logic to presume that he did not understand the consequences of his failure to raise such matters within the seven days. Obviously, the fact of knowledge of the seven day limitation by Fryberger compels the conclusion that he knew if he delayed beyond seven days, his right to raise such matters would be lost. Moreover, the record explicitly shows that this former police official discussed possible trial errors with his privately retained counsel and decided that *tactically,* it would be wiser to attack his conviction in a collateral proceeding.[1] I believe it is error to award an appellant "two bites of the apple" when his first tactic fails—I think the principle of waiver still has vitality in our criminal law.

While I have already expressed my dissent to the holding of the majority under the facts of the instant case, I feel compelled to note one further matter which has been troublesome to me in this case and several similar appeals. I am concerned with the increasing tendency in our appellate courts to require what might be termed "spoonfeeding" of criminal defendants. The trend in many appellate decisions seems destined to compel a holding some day that every criminal defendant be afforded a full course in criminal law and proce-

---

[1] When his hopes for a suspended sentence did not materialize, Fryberger appealed the propriety of sentence to our Court.

134

dure and one in constitutional law before a conviction may be finalized. The instant case is an example of a situation wherein the holding seems to require that a layman who is a defendant be afforded a similar understanding of all of the intricacies of criminal law to the same extent as that of his privately retained attorney before we will give weight to a conscious decision not to file an appeal. Not only do I think such a situation is wrong, but I believe it belittles the position and integrity of competent defense counsel.

WATKINS, P. J., joins in this dissenting opinion.