375 A.2d 727

**COMMONWEALTH of Pennsylvania**

v.

**Ezekiel KINSEY, Appellant.**

Superior Court of Pennsylvania.

Submitted March 18, 1976.

Decided June 29, 1977.

2

Robert J. F. Brobyn, Philadelphia, for appellant.

Steven H. Goldblatt, Assistant District Attorney, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

4

PRICE, Judge:

Appellant was found guilty by a judge sitting without a jury of criminal conspiracy [1] and receiving stolen property.[2] Three claims are presented in this appeal: (1) the evidence was insufficient to support a conviction of criminal conspiracy; (2) the evidence was insufficient to support a conviction of receiving stolen property; and (3) the trial court erred in denying appellant's motion to suppress physical evidence.

First, we hold that because the contentions raised in this appeal were also made in oral motions, on the record, at the conclusion of trial, they were properly preserved for our review under Pa.R.Crim.P. 1123(b). Reaching the merits of appellant's claims, we find that the Commonwealth did not produce sufficient evidence to support convictions of criminal conspiracy and receiving stolen property. We must therefore vacate the judgments of sentence imposed on appellant and order him discharged.

On February 18, 1975, at approximately 11:45 p. m., police officers responded to a call that a burglary was in progress. The eyewitness who placed the call stated that two men were breaking into a garage next to the house at 304 West Hotter Street in Philadelphia. The officers arrived on the scene and apprehended two suspects.

At approximately 5:40 a. m. the following morning, February 19, 1975, one of the officers who had responded to the burglary call observed appellant pulling a handcart with three cartons on it north on Germantown Avenue. The location was two blocks from the scene of the earlier burglary. Although appellant was doing nothing illegal, the officer decided to stop him for a brief investigation. The officer testified that he was not in any way concerned for his safety.

Upon effecting the stop, the officer noticed two one-gallon containers of Sears anti-freeze in one of the cartons. The officer testified that he had seen six such containers at the

1. 18 Pa.C.S. § 903.

2. 18 Pa.C.S. § 3925.

scene of the earlier burglary and his suspicions were thus aroused. He conducted a further search of the cartons and discovered ten cans of M & R brand anti-freeze as well as various tools. Appellant did not answer, to the officer's satisfaction, questions concerning appellant's destination and the source of the various items. Appellant was arrested and transported to the scene of the Hotter Street burglary. The victim of that crime could not make a positive identification of any of the items, but stated that the handcart, cartons, and anti-freeze were the same kind as those owned by him.

Appellant filed a motion to suppress the evidence obtained during the stop and search of February 19, 1975. This motion was argued and denied on August 14, 1975, and appellant was tried the same day by the judge who heard the suppression motion. Although trial was completed in one day, judgment was reserved until September 4, 1975. At that time, appellant was found guilty on both charges and was sentenced to two concurrent terms of six to twenty-three months imprisonment. The lower court also made parole conditional on appellant's in-patient participation in a drug rehabilitation program. Appellant's counsel then made oral post-trial motions challenging the sufficiency of the evidence to support either conviction and also the court's refusal to suppress physical evidence resulting from an allegedly illegal stop and search.

We direct our initial inquiry to the effect and significance of the oral post-trial motions made by appellant's counsel. At the conclusion of trial, Rule 1123(c) assumes a position of primary importance. This section states:

"(c) Upon the finding of guilt, the trial judge shall advise the defendant on the record: (1) of his right to file post-verdict motions and of his right to the assistance of counsel in the filing of such motions and on appeal of any issues raised therein; (2) of the time within which he must do so as set forth in paragraph (a); and (3) that only the grounds contained in such motions may be raised on appeal."

Responsibility rests upon the trial judge to impart the above-recounted information to the defendant. This is a vital function in several different respects. First, it insures that the defendant is apprised of his post-verdict rights and their correlative significance in terms of the appellate process. The defendant's appellate rights are thus protected and unintelligent waiver of these rights is precluded. Second, adherence to the dictates of Rule 1123(c) makes possible the fair and logical application of the theory of waiver in regard to inadequately preserved claims for appellate review.

The concept of waiver of appellate claims, as promulgated by the Pennsylvania Supreme Court in *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), has been treated and applied in a myriad of subsequent cases, both in that court and our own. The many considerations supporting the waiver rule were re-examined by the Supreme Court in *Commonwealth v. Mitchell*, 464 Pa. 117, 346 A.2d 48 (1975). Judicial economy is promoted by allowing the trial court a first opportunity to review and perhaps correct asserted trial errors. Effective appellate review is enhanced by the presentation of only those issues clearly framed in post-trial motions below. The appellate court receives the benefit of the trial court's reasoning on these matters and proper presentation of potential appellate claims at trial engenders a complete record. Finally, careful preparation and effective trial advocacy are promoted, as an ill-prepared or careless attorney can no longer expect an appellate court to alleviate the consequences of his inadvertence.[3] Post-trial procedure, the appellate process and the enforcing agency of waiver are thus closely interwoven in the judicial system of this Commonwealth. Rule 1123 serves a dual function within this universe, promoting the cause of efficient and effective legal process, but simultaneously protecting the rights of convicted defendants by assuring that post-trial claims are not unknowingly or unintelligently waived.

3. The rubric of ineffective assistance of counsel acts to prevent criminal defendants from suffering injustice due to counsel's negligence or lack of skill.

■ The section of Rule 1123 which is especially relevant to the instant case provides:

"(b) If the defendant agrees on the record, the post-verdict motions may be made orally at the conclusion of the trial. The defendant may also within the seven (7)-day period on the record voluntarily and understandingly waive the filing of post-verdict motions. Prior to the acceptance of such waiver the trial judge shall, pursuant to paragraph (c) of this Rule, advise the defendant on the record that his waiving of post-verdict motions shall preclude his raising on appeal any issues which might have been raised in such motions."

In a situation where the defendant indicates his intention or desire to enter oral post-verdict motions, one possible interpretation of the above-quoted language would make it the responsibility of the trial judge to establish on the record the defendant's consent to this procedure. We do not believe that the rule contemplates the placing of this additional burden upon the trial court. If the trial judge has properly informed the defendant, upon the record in open court, of his post-verdict rights under 1123(c), and the defendant, by counsel, thereafter proceeds to make oral motions, these motions would be proper and effective under 1123(b). In the aforestated circumstances, the post-trial claims raised orally would be properly preserved for appellate review, and assuming no further written motions were timely filed, arguments not included in the oral motions would be waived for appellate purposes.

■ In cases dealing with waiver or withdrawal of post-trial motions, our Supreme Court has held that the record must demonstrate the course of action chosen by the defendant to have been "knowing and intelligent." *Commonwealth v. Schroth*, 458 Pa. 233, 236, 328 A.2d 168, 169 (1974). This court has clearly indicated that the information required by Rule 1123(c), appearing on the record, could support a finding of waiver. *Commonwealth v. Fryberger*, 232 Pa.Super. 127, 334 A.2d 743 (1975). It would be highly incongruous to set a more stringent standard of proof in

order to bind to his choice a defendant who elects oral post-trial motions than is required to prove a waiver or withdrawal of post-trial motions *in toto.* This would not constitute a presumption of waiver of appellate rights from a silent record, *see Commonwealth v. Fryberger, supra.* Where the record reflects that the defendant was informed of his rights under 1123(c), the subsequent entry of oral motions may reasonably be construed as "a deliberate, intelligent and voluntary act." *Commonwealth v. Coleman,* 458 Pa. 324, 326, 327 A.2d 77, 79 (1974).

Having determined that defense counsel's oral motions at the conclusion of trial properly preserved, under Pa.R. Crim.P. 1123(b), the claims raised in this appeal, we now proceed to examine the merits of those claims. Appellant first contends that the evidence adduced by the Commonwealth was insufficient to prove him guilty of conspiracy to commit burglary. Section 903 of the Crimes Code contains the following definition of criminal conspiracy:

"(a) A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime."

██ "It is established law in this Commonwealth that a conspiracy may be proved by circumstantial evidence as well as by direct evidence." *Commonwealth v. Eiland,* 450 Pa. 566, 570, 301 A.2d 651, 652 (1973). Further, "while more than mere association must be shown, '[a] conspiracy may be inferentially established by showing the relation, conduct or circumstances of the parties, and the overt acts on the part of coconspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed: [citation omitted].' " *Commonwealth v. Roux,* 465 Pa. 482,

488, 350 A.2d 867, 870 (1976), *quoting Commonwealth v. Horvath*, 187 Pa.Super. 206, 211, 144 A.2d 489, 492 (1958). However, regardless of the nature of the evidence, it is always necessary that the Commonwealth prove that the defendant shared ". . . a common understanding or agreement which is the heart of every conspiracy." *Commonwealth v. Roux, supra* 465 Pa. at 487, 350 A.2d at 869. *See also Commonwealth v. Waters*, 463 Pa. 465, 345 A.2d 613 (1975); *Commonwealth v. Yobbagy*, 410 Pa. 172, 188 A.2d 750 (1963).

■ In this case, the Commonwealth adduced no proof of appellant's participation in an unlawful agreement or understanding. No evidence was produced to link appellant, either directly or circumstantially, with the two other burglary suspects. Viewing the record in the light most favorable to the Commonwealth and granting to it all reasonable inferences from the evidence, the only matter established at trial was that appellant was apprehended in possession of certain goods which were similar to those stored in the complainant's garage prior to February 18. There was no testimony identifying appellant as a participant in the February 18 burglary attempt, nor was there any testimony indicating that appellant even knew the two suspects arrested on that occasion. Given the complete absence of evidence of an unlawful agreement, appellant's conviction for conspiracy could have been based only on impermissible suspicion and conjecture. We therefore vacate the judgment of sentence imposed on appellant on the charge of criminal conspiracy.

The second contention advanced by appellant is that the evidence was insufficient to convict him of receiving stolen property. Section 3925 of the Crimes Code defines this offense as follows:

"(a) A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner."

10

The requisite factors for proof of this crime are set out in *Commonwealth v. Davis*, 444 Pa. 11, 15, 280 A.2d 119, 121 (1971), where the court states: "[i]t is settled that the Commonwealth has the burden of proving three distinct elements of the crime of receiving stolen goods: (a) that the goods are stolen; (b) that the defendant received such goods; and (c) that he received them knowing, or having reasonable cause to know, that they were stolen." *See also Commonwealth v. Henderson*, 451 Pa. 452, 304 A.2d 154 (1973); *Commonwealth v. White*, 233 Pa.Super. 195, 334 A.2d 757 (1975).

Appellant particularly asserts that the evidence failed to prove beyond a reasonable doubt that the goods found in his possession in the early hours of February 19, 1975, were stolen. The complainant testified that a police officer brought appellant to his garage that same morning. The officer showed the complainant the items taken from appellant at the time of his arrest, including a handcart, a trash barrel, several containers of anti-freeze and some tools. At trial, the complainant first stated that he had identified the property as his. However, upon further questioning, the complainant testified that he could not identify any of the cans of anti-freeze other than that some were the same brand name (Sears) as those he had kept in his garage. The complainant did not identify or claim to own the cans of M & R anti-freeze. According to the complainant's further testimony the handcart and trash barrel were similar to items kept in his garage prior to the burglary and missing thereafter, but he could not specifically identify them as his property. Finally, a police officer testified that the complainant had identified the tools found in appellant's possession. The complainant, however, stated that he did not remember being shown any tools nor was he even certain that any tools had been taken from his garage.

"In any criminal prosecution, the Commonwealth has an unshifting burden to prove beyond a reasonable doubt all elements of the crime." *Commonwealth v. Rose*, 457 Pa. 380, 389, 321 A.2d 880, 884 (1974). From the facts recounted

above, it is clear that the Commonwealth did not produce evidence establishing beyond a reasonable doubt that the property in appellant's possession had been stolen from the complainant's garage or that it had been stolen at all. We must therefore vacate the judgment of sentence imposed on the charge of receiving stolen goods. Because we vacate both sentences imposed on appellant, we order his discharge.[4]

HOFFMAN, J., files a concurring opinion in which CERCONE and SPAETH, JJ., join.

HOFFMAN, Judge, concurring:

Appellant was convicted of conspiracy to commit burglary[1] and receiving stolen property.[2] He raises three contentions for our consideration: (1) the Commonwealth produced insufficient evidence to support a conviction of criminal conspiracy; (2) the Commonwealth produced insufficient evidence to support a conviction of receiving stolen property; and (3) the trial court erred in denying appellant's motion to suppress physical evidence obtained through an allegedly illegal search and seizure. First, I would hold that appellant's counsel properly preserved these contentions for our review by making oral post-verdict motions in accordance with Rule 1123(b), Pa.R.Crim.P., 19 P.S. Appendix. Accordingly, I would reach the merits of appellant's claims and hold that the Commonwealth did not produce sufficient evidence to support convictions of criminal conspiracy and receiving stolen property. I would vacate the judgments of sentence imposed on appellant and order him discharged.

Rule 1123 provides, in pertinent part:

"(a) Within seven (7) days after a finding of guilt, the defendant shall have the right to file written motions for

4. Our disposition obviates consideration of appellant's illegal search and seizure claim.

1. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S. §§ 903, 3502.

2. The Crimes Code, supra; 18 Pa.C.S. § 3925.

a new trial and in arrest of judgment. Only those grounds may be considered which were raised in pre-trial proceedings or at trial, unless the trial judge, upon cause shown, allows otherwise. Argument shall be scheduled and heard promptly after such motions are filed, and only those issues raised and the grounds relied upon in the motions may be argued. If the grounds asserted do not require a transcript, neither the filing nor argument of post-verdict motions shall be delayed for lack of a transcript of the notes of testimony.

(b) If the defendant agrees on the record, the post-verdict motions may be made orally at the conclusion of the trial. The defendant may also within the seven (7)-day period on the record voluntarily and understandingly waive the filing of post-verdict motions. Prior to the acceptance of such waiver the trial judge shall, pursuant to paragraph (c) of this Rule, advise the defendant on the record that his waiving of post-verdict motions shall preclude his raising on appeal any issues which might have been raised in such motions.

(c) Upon the finding of guilt, the trial judge shall advise the defendant on the record: (1) of his right to file post-verdict motions and of his right to the assistance of counsel in the filing of such motions and on appeal of any issues raised therein; (2) of the time within which he must do so as set forth in paragraph (a); and (3) that only the grounds contained in such motions may be raised on appeal."

In the case at bar, the trial judge and appellant's counsel engaged in the following interchange:

"THE COURT: Will you advise your client of his right of appeal?

"[DEFENSE COUNSEL]: Yes, Your Honor. Will he have the usual seven days to file a motion for a new trial?

"THE COURT: And now that I have entered the sentence, he has a right of appeal.

"[DEFENSE COUNSEL]: Come to think of it, that's correct. Prior to the sentencing, then, Your Honor, since I wasn't thinking, I would like to.

"THE COURT: You can make your motions in arrest of judgment.

"[DEFENSE COUNSEL]: I'd like to make a motion in arrest of judgment or for a new trial.

"THE COURT: Right. You may do that to protect yourself on the record.

"[DEFENSE COUNSEL]: That's correct, and the reasons for that would [be] the standard reasons. I would argue that the verdict is against the weight of evidence, that the verdict is not based on the law. I would further argue that the testimony in this case from the complaining witness never proved that the items that were found in [appellant's] possession were really the complaining witness's items, that his testimony was in fact that he couldn't be sure they were his; they were only similar to the items that were taken from him. I would also argue that the denial of [appellant's] motion to suppress was improper, that the officer had no probable cause to stop him at 6:00 in the morning and to look into the box and discover the items that he discovered, and further, that the evidence does not show—there was no evidence at all of any conspiracy here or any involvement by [appellant] with the other two men involved in this. They were seen by two witnesses. [Appellant] was not seen there at the time. In fact, one of the officers testified that the items found in [appellant's] possession were placed back into the garage so that, in fact, the Commonwealth's testimony established that [appellant] could not have been involved in that burglary and could not have conspired with these men; and that [appellant] was found six hours later a block from the crime—six houses. He could have gone a lot further than a block. Indicating that, if anything here, we have a totally separated crime or a possibility of a finding of items lying on the sidewalk, or as I—well, Your Honor, all other arguments I made before  .   . ..

"THE COURT: And the motion in arrest of judgment and for new trial is denied.

"The sentence previously imposed is reimposed."

I would hold that appellant's counsel properly preserved his contentions for our review by making oral post-verdict motions on the record at the conclusion of trial in accordance with Rule 1123(b). These motions are properly before us, despite the fact that appellant did not indicate his personal agreement to the making of these motions.[3] I believe that the Supreme Court formulated Rule 1123(b) and (c) to protect a defendant from unknowingly waiving his rights of appeal. Sections (b) and (c) of Rule 1123 inform the defendant of his appellate rights and require his participation before he can be deemed to have waived them. For example, Rule 1123(c) requires that the trial court advise a defendant of his right to file post-verdict motions and of the consequences that attach to failure to file.[4] Rule 1123(b) allows a defendant to waive knowingly and voluntarily the filing of post-verdict motions after the trial court advises him that waiver will preclude an appeal on any issues which might have been raised in such motions. The defendant must personally make this waiver. The requirement that a defendant agree on the record to the making of oral post-verdict motions should be construed consistently with the other provisions contained in Rule 1123. In short, this provision should be construed to protect, not defeat, a de-

3. It would be unreasonable in the extreme to expect a defendant to join spontaneously in counsel's making of oral post-verdict motions. The incongruity of such an expectation is particularly apparent in light of the following dialogue at the conclusion of trial:

"[Defense Counsel]: I'd like to make a motion in arrest of judgment or for a new trial.

"The Court: Right. You may do so to protect yourself on the record." We cannot require an accused, undoubtedly unschooled in the intricacies of the Rules of Criminal Procedure, to correct both the trial court and his attorney.

4. In the instant case, the trial court did not comply with Rule 1123(c). This omission in itself is a serious error which may require relief for a defendant. Cf. *Commonwealth v. Miller*, 232 Pa.Super. 171, 335 A.2d 528 (1975). Because I am convinced that appellant properly preserved his claims, I do not decide what relief a defendant might be entitled to when Rule 1123(c) is violated.

fendant's appellate rights. The trial court should inform the defendant of the prejudice that could result if counsel does not reserve the right to file written post-verdict motions. The court should then solicit and obtain a defendant's agreement to the oral motions.[5] The appellant in the case at bar should not be penalized for the trial court's failure to obtain his consent. Only this result comports with the thrust of Rule 1123(b) and (c); a contrary result is tantamount to the disfavored practice of presuming a waiver of valuable appellate rights from a silent record. Cf. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Commonwealth v. Cornitcher*, 447 Pa. 539, 291 A.2d 521 (1972); *Commonwealth v. Swain*, 237 Pa.Super. 322, 354 A.2d 256 (1975). Therefore, I conclude that the oral post-verdict motions made at the conclusion of trial properly preserved appellant's claims for our review, despite the lack of express consent on the record by appellant to the making of the motions. Cf. *Commonwealth v. Ruckinger*, 239 Pa.Super. 520, 362 A.2d 317 (1976); *Commonwealth v. Bhojwani*, 242 Pa.Super. 406, 364 A.2d 335 (1976).[6]

At approximately 11:30 p. m. on February 18, 1975, an eyewitness informed the police that two individuals were breaking into his neighbor's garage. The eyewitness saw two shadows in the garage. When the police arrived, the two individuals ran out of the garage. One dropped something in the driveway and ran into the bushes on the adjoining property. The other individual ran up the street

5. If the trial court accepts counsel's oral post-verdict motions without informing defendant of the consequences and securing his consent, then the defendant will not be precluded from filing additional motions pursuant to Rule 1123(a). If, however, the trial court has fully complied with Rule 1123(c) and defendant does not file these additional written motions within seven days after the verdict, then he will have waived his Rule 1123(a) rights. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975).

6. *Commonwealth v. Blair*, supra, only construed Rule 1123(a) and does not in any way affect the applicability and operation of Rule 1123(b). See *Commonwealth v. Ruckinger*, supra.

carrying something in his hands. The police quickly apprehended two suspects.

At 5:40 a. m., February 19, 1975, a police officer who had responded to the earlier burglary call observed appellant pulling a handcart with three cartons on it. Appellant was two blocks from the scene of the earlier burglary. The officer stopped appellant and questioned him as to his destination. Appellant responded that "he had brought some stuff from home he was taking to his boss' house." The officer asked appellant the location of his boss's home. According to the police officer, appellant's only response was to "just [keep] pointing over there, over there." While talking to appellant, the police officer noticed two one-gallon cans of Sears anti-freeze on the handcart and remembered seeing six one-gallon containers of Sears anti-freeze at the scene of the earlier break-in. Appellant was asked what the other boxes contained; he responded: "I just got stuff." The police officer then opened the two remaining cartons and discovered ten cans of M & R brand anti-freeze and various tools. He arrested appellant and transported him, and the articles in his possession, to the complainant's garage. The complainant could not positively identify the items, but stated that the handcart, the trash barrel, and some anti-freeze cans were the same kind as those owned by him.

On August 14, 1975, the lower court denied appellant's motion to suppress. On the same day, appellant and a co-defendant, one of the suspects arrested immediately after the burglary, were tried together. The lower court reserved judgment until September 4, 1975. At that time, the trial court found appellant guilty of criminal conspiracy to commit burglary and of receiving stolen property and sentenced him to concurrent 6 to 23 months' terms of imprisonment. The lower court also conditioned parole on appellant's in-patient participation in a drug rehabilitation program. As quoted above, appellant's counsel then made oral motions in arrest of judgment and for a new trial. The lower court denied the motions and this appeal followed.

Appellant's first contention is that the evidence was insufficient to convict him of criminal conspiracy to commit burglary. Section 903(a) of the Crimes Code defines conspiracy as follows:

"(a) A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

"(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

"(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime."

The Supreme Court in *Commonwealth v. Yobbagy*, 410 Pa. 172, 176–177, 188 A.2d 750, 752 (1963), summarized the standards which govern claims of insufficient evidence of criminal conspiracy: ". . . (1) the Commonwealth must be given the benefit of all favorable testimony and all reasonable inferences arising therefrom: *Commonwealth v. Moore*, 398 Pa. 198, 202, 157 A.2d 65; *Commonwealth v. Wright*, 383 Pa. 532, 536, 119 A.2d 492; (2) evidence to sustain a charge of conspiracy must be such as reasonably and naturally justifies an inference of guilt of the accused and is of such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt." While circumstantial evidence may suffice to prove criminal partnership, "*[t]he heart of every conspiracy is a common understanding no matter how it comes into being.*" Id., 410 Pa. at 177, 188 A.2d at 752. (Emphasis supplied). The Commonwealth must prove that the accused entered into an unlawful agreement and participated in the offense with knowledge of that agreement. *Commonwealth v. Yobbagy*, supra. See also *Commonwealth v. Minnich*, 236 Pa.Super. 285, 344 A.2d 525 (1975); *Commonwealth v. Armbruster*, 225 Pa.Super. 415, 311 A.2d 672 (1973); *Commonwealth v. Santana*, 216 Pa.Super. 183, 264 A.2d 724 (1970); *Commonwealth v. Zebrak*, 216

Pa.Super. 33, 260 A.2d 480 (1969); *Commonwealth v. Schwartz*, 210 Pa.Super. 360, 233 A.2d 904 (1967), affirmed, 432 Pa. 522, 248 A.2d 506 (1968).

Quite simply, the Commonwealth did not prove the common understanding which must underlie a conviction for criminal conspiracy. The Commonwealth did not introduce any evidence which either directly or circumstantially connected appellant with the two other suspects arrested for burglary. Even giving the Commonwealth the benefit of all favorable testimony and all reasonable inferences therefrom, the Commonwealth established only that appellant was discovered with some goods of the same type as were stored in the complainant's garage prior to the February 18 break-in. No one identified appellant as a participant in the break-in nor did anyone even testify that appellant knew the two suspects arrested immediately after the burglary. Assuming that the goods in appellant's possession were, in fact, taken from complainant's garage,[7] appellant might have performed an independent burglary or he might have discovered the goods scattered outside after the first burglary. In sum, the Commonwealth introduced no evidence allowing the inference of an unlawful agreement or a common understanding between appellant and the participants in the break-in. Appellant's conviction on the conspiracy count could only be based upon impermissible suspicion and conjecture. *Commonwealth v. Yobaggy*, supra; *Commonwealth v. Santana*, supra. Therefore, I would vacate the judgment of sentence imposed on appellant on the charge of criminal conspiracy.

Appellant's second contention is that the evidence was insufficient to prove that he received stolen property. "In a prosecution for receiving stolen property, the Commonwealth must prove beyond a reasonable doubt the three elements of the crime: (1) that certain goods were stolen;

---

**7.** The evidence, viewed in the light most favorable to the Commonwealth, does not compel this assumption. As discussed *infra*, I believe that the Commonwealth did not adduce sufficient evidence to establish beyond a reasonable doubt that the goods were removed from complainant's garage.

(2) that the defendant received some or all of the goods; and (3) that he received them knowing or having reason to know that the goods were stolen. *Commonwealth v. Davis*, 444 Pa. 11, 280 A.2d 119 (1971)." *Commonwealth v. White*, 233 Pa.Super. 195, 198, 334 A.2d 757, 759 (1975). See also *Commonwealth v. Henderson*, 451 Pa. 452, 304 A.2d 154 (1973); *Commonwealth v. Justice*, 230 Pa.Super. 537, 326 A.2d 564 (1974).

Appellant specifically contends that the Commonwealth did not introduce sufficient evidence to prove beyond a reasonable doubt that the goods found in his possession on February 19, 1975, were stolen. The complainant testified that a police officer brought appellant to his garage on the morning of February 19, 1975. The police officer showed the complainant articles in appellant's possession at the time of his arrest, including a trash barrel, a cart, and some cans of anti-freeze. The complainant testified that he identified the items as belonging to him. However, upon closer questioning by the Commonwealth, complainant testified that he could not identify the anti-freeze cans other than that they were the same brand (Sears) as those kept in his garage.[8] He also could not testify as to how many, if any, cans were missing. The complainant also testified that the handcart and trash barrel were similar in kind to ones kept in his garage before February 19, and missing thereafter, but he could not be certain that these items belonged to him because there were no identifying marks on either article. Finally, a police officer testified that the complainant identified some tools in appellant's possession. The complainant, however, testified that he did not remember the officer showing him any tools nor was he even sure that any tools had been taken on February 18, or 19. In sum, complainant's testimony did not establish that any Sears anti-freeze cans or tools were taken from complainant's garage on February 18, or 19, nor did his testimony prove that the cart, trash barrel, tools, and anti-freeze cans were actually in his

8. The police recovered some cans of M & R anti-freeze after searching the cartons in appellant's possession. The complainant never testified that he owned these cans.

garage before February 19. Therefore, the Commonwealth did not show beyond a reasonable doubt that the goods came from complainant's garage. See *Commonwealth v. Vozzelli*, 217 Pa.Super. 18, 268 A.2d 132 (1970); cf. *Commonwealth v. Gold*, 155 Pa.Super. 364, 38 A.2d 486 (1944). I would vacate the judgment of sentence on the charge of receiving stolen goods. Because I would vacate the sentences imposed on appellant for both charges of which he was convicted, I would order appellant discharged.[9]

CERCONE and SPAETH, JJ., join in this concurring opinion.

9. Because of this conclusion, I do not address appellant's claim that the search and seizure in this case violated the Fourth Amendment to the United States Constitution.