J-A14017-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAQUEL SHAMON TIRADO | : | |
| | : | |
| Appellant | : | No. 1225 WDA 2019 |

Appeal from the Judgment of Sentence Entered March 23, 2018
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0003831-2016

BEFORE:   SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:                    FILED SEPTEMBER 22, 2020

Jaquel Shamon Tirado appeals from the judgment of sentence entered after a jury convicted him of First-Degree Murder and numerous other crimes: Aggravated Assault – Causing Bodily Injury, Aggravated Assault – Causing Bodily Injury with a Deadly Weapon, Recklessly Endangering Another Person ("REAP"), Tampering with Physical Evidence, Possessing Instruments of Crime ("PIC"), Conspiracy to commit Murder, Conspiracy to commit Aggravated Assault – Causing Bodily Injury, Conspiracy to commit Aggravated Assault – Causing Bodily Injury with a Deadly Weapon, and Persons not to Possess Firearms.[1] Tirado challenges the sufficiency of the evidence. We affirm.

Tirado was charged in December 2016, with offenses related to the killing of Stephen Bishop on Cottage Street in Erie. Tirado was a juvenile at

_____

[1] 18 Pa.C.S.A. §§ 2502(a), 2702(a)(1), 2702(a)(4), 2705, 4910(1), 907, 903, and 6105(a)(1), respectively.

the time of the crime, but the charges were in criminal court. At a jury trial, the investigating officer, Detective Christopher Janus, testified and narrated surveillance video depicting Victim and Tirado. Video from various cameras showed Tirado and two other individuals approach Victim and continue to walk with him. N.T., Day 2, 178. Tirado and one of those individuals were supporting the right pockets of their pants, as if the pockets contained firearms. Id. at 181, 183, 185-86, 190. One of the videos showed Victim, Tirado, and the others entering Cottage Street, after which the sound of eight gunshots could be heard. Id. at 193-95. The video shows Tirado and another individual 18 seconds later running from the scene. Id. As they ran, their right hands supported an item in each of their right pants pockets. Id. The videos showed Tirado wearing a white t-shirt and tan pants, and did not capture anyone else wearing tan pants and a white shirt at the time of the shooting. Id. at 198.

Detective Janus testified on cross-examination that Tirado's cousin, Eli Tirado, was a suspect, as the police officers believed he was there at the time of the shooting. N.T., Day 3, 96. Police found Eli's cell phones, jacket, and cigarette pack near the property where they recovered Victim's body. Id. at 90. However, at the time of the trial, Detective Janus testified that "based on [his] investigation now, [he] would call [Eli] a victim." Id. The officers also interviewed numerous other individuals as potential persons of interest. Id. at 88-103. Detective Janus stated that the people mentioned were "investigated and cleared." Id. at 103. Detective Janus further testified that

the video showed one of the individuals with Tirado, Keyon Lucas, was on foot, and another, Xavier Wykoff, was on a bike. Id. at 105. Police did not charge either one in relation to the shooting.

An eyewitness, Ralph Green, testified that he was sitting on his porch, which was near the scene of the shooting, and he saw two teenagers lure Victim down the street. Id. at 199. Green said one of the teenagers was wearing a white shirt and tan or gray pants. Id. at 198. He heard gunshots, but did not see the shooting. Green said he then looked down the street and saw Victim stagger to a porch, and the person in tan or gray pants put a gun in his pants pocket, follow the Victim to a porch, and then run from the scene. Id. at 197, 200, 202, 205-06, 211. Green also testified that the individual with a white shirt and tan or gray pants had braids. Id. at 200-01. Green could not identify the face of the individual with the white shirt and tan or gray pants. Id. at 203-05.

The officers investigating the shooting, sent photos captured from the video to other officers for assistance with identification. N.T., Day 2, at 187-88. Officer Justin Landfried testified that he viewed the still frame from the video and recognized Tirado from prior encounters, which included 15 to 20 face-to-face interactions. N.T., Day 3, at 190-91. He was 100% confident in his identification, and previously had seen Tirado wearing a white t-shirt and tan pants. Id. at 192.

Officer Dave Madurski testified that a couple hours after the shooting, he knocked on a door on the street where the video surveillance had last

captured the fleeing suspects. N.T., Day 3, at 217-19. He found Tirado in an upstairs bedroom, holding a baby. Id. at 219-220. Officer Madurski testified that Tirado seemed nervous, was sweating, was wearing black shorts and no shirt, his hair was styled as a "short afro," and the interaction was "awkward." Id. at 221. He testified that "[i]t appeared as if the stage had been set." Id.

After obtaining a warrant, police officers searched Tirado's residence, and discovered white t-shirts and a pair of tan pants. Id. at 228, 232, 237. The pants were in a plastic garbage bag in Tirado's bedroom. The bag also contained a label discarded from a new article of clothing. N.T., Day 4, at 41; N.T., Day 3, at 232-34.

Police officers recovered two types of bullets – .9 mm bullets from Victim's body and .32 caliber bullets at the scene. N.T., Day 2, at 149-54, 168. An expert in primer gunshot residue analysis and interpretation, Allison Laneve, testified that the tan pants found at Tirado's residence bore gunshot residue. The residue was on the front of both legs of the pants, and the right pants pocket. N.T., Day 4, at 69-71. A forensic DNA scientist, Joseph Kukosky, testified that DNA testing on material recovered from the zipper of the tan pants revealed a Y chromosome identical to Tirado's Y chromosome. N.T., Day 4, at 30. Kukosky stated that the material could have been from Tirado or any of Tirado's paternal male relatives. Id. at 31.

A forensic pathologist, Dr. Eric Vey, testified that the Victim died "as a result of a gunshot wound to the chest, with the entrance in the left proximal arm." N.T., Day 2, at 119. He stated that a bullet entered Victim's left arm

- 4 -

and wounded a number of major organs, including Victim's left lung, brachiocephalic artery, and trachea. Id. at 122-23. He said that a second bullet entered his right foot. Id. at 120

The jury found Tirado guilty as above, and the trial court imposed an aggregate sentence of 42 years to life in prison. Tirado filed a post-sentence motion, which the trial court denied. After Tirado obtained reinstatement of his appellate rights nunc pro tunc through a timely Post Conviction Relief Act petition, he filed this appeal. His issue on appeal challenges the sufficiency of the evidence:

> Whether the Commonwealth failed to present sufficient evidence to find [Tirado] guilty beyond a reasonable doubt of murder of the first degree, conspiracy to commit murder of the first degree, aggravated assault, conspiracy to commit aggravated assault, recklessly endangering another person, tamper with/fabricate physical evidence, possession of an instrument of crime, and possession of a firearm prohibited?

Tirado's Br. at 3.

When reviewing a challenge to the sufficiency of the evidence, we "must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." Commonwealth v. Feliciano, 67 A.3d 19, 23 (Pa.Super. 2013) (en banc) (quoting Commonwealth v. Stokes, 38 A.3d 846, 853-854 (Pa.Super. 2011)). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt,

the sufficiency of the evidence claim must fail." Id. (quoting Stokes, 38 A.3d at 853). This standard applies equally where the Commonwealth's evidence is circumstantial. Commonwealth v. Patterson, 180 A.3d 1217, 1229 (Pa.Super. 2018).

Tirado first argues the Commonwealth presented insufficient evidence to support the First-Degree Murder conviction. He maintains the Commonwealth did not prove that he was the perpetrator of the killing or that he had the specific intent to kill. He argues that the presence of gunshot residue on the pants meant only that the person wearing the pants was nearby when a firearm discharged, not that the person wearing the pants fired a gun. He also claims that the DNA from the button and zipper from the tan pants matched Tirado's Y chromosomal sample. He claims this could have matched his cousin, Eli Tirado, whom police also questioned. Tirado further points out that Green testified that the person with a white shirt and tan pants had braided hair, and notes that he did not have braided hair when an officer spoke with him later that day. Tirado also highlights that Green testified that he did not see the shooter's face and did not make an in-court identification.

Tirado further claims that the Commonwealth failed to prove he had a specific intent to kill. He argues that the bullet entered Victim's left arm and right foot, which are not vital organs. He asserts that the evidence therefore does not support an inference of specific intent.

"To sustain a conviction for first-degree murder, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the accused

was responsible for the killing; and (3) the accused acted with malice and a specific intent to kill." Commonwealth v. Williams, 176 A.3d 298, 306-07 (Pa.Super. 2017) (citing Commonwealth v. Ballard, 80 A.3d 380, 390 (Pa. 2013)). "A jury may infer the intent to kill 'based on the accused's use of a deadly weapon on a vital part of the victim's body.'" Id. at 307 (citation omitted) (quoting Commonwealth v. Sanchez, 36 A.3d 24, 37 (Pa. 2011)).

The trial court concluded the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that Tirado committed First-Degree Murder. It noted that that the autopsy established that the Victim died from a gunshot wound to the chest. The court further pointed out that the surveillance video showed Tirado and others with the Victim immediately prior to the shooting, and depicted Tirado and another individual supporting their right pockets, as if the pockets contained guns, and an eyewitness testified that Tirado put a gun back in his pocket and fled the scene.

After review of the briefs, the certified record, and the well-reasoned opinion of the Honorable Stephanie Domitrovich, we agree that the evidence was sufficient to prove First-Degree Murder beyond a reasonable doubt. We thus affirm based on the trial court's opinion. Trial Court's Opinion, filed Oct. 15, 2019, at 5-7 ("1925(a) Op."). We add only that Tirado's arguments go to the weight of the evidence, and do not render it insufficient as a matter of law. The jury saw both the video and Tirado, and heard all of the testimony, and was capable of resolving any discrepancies and determining whether Tirado was, in fact, the shooter.

Tirado's challenge to the finding that Tirado had a specific intent to kill likewise fails. Although the bullet entered Victim's left arm, it penetrated his chest, suggesting that killing Victim was the shooter's intention all along. This, coupled with the evidence that Tirado and another individual lured Victim to the location, while appearing to carry weapons in their pockets, supports a finding that Tirado had the specific intent to kill.

Tirado also claims the Commonwealth presented insufficient evidence to support the aggravated assault convictions. He argues the Commonwealth did not establish that he was the individual responsible for causing Victim's injuries, or that the injuries arose from Tirado's use of a deadly weapon.

The two convictions for aggravated assault required the Commonwealth to prove two slightly different things. One required proof that Tirado "attempt[ed] to cause serious bodily injury to another, or cause[d] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life," while the other required evidence that he "attempt[ed] to cause or intentionally or knowingly cause[d] bodily injury to another with a deadly weapon," 18 Pa.C.S.A. § 2702(a)(1), (a)(4), respectively. A deadly weapon for this purpose includes "[a]ny firearm, whether loaded or unloaded . . . ." 18 Pa.C.S.A. § 2301.

The trial court concluded the Commonwealth presented sufficient evidence to support the conviction for Aggravated Assault under Section 2702(a)(1). It reasoned the evidence proved that Tirado and another individual were carrying items in their front pants pockets, there was gunshot

residue on the pants recovered from Tirado's residence, Green saw Tirado put a gun back in his pocket, and the video showed Tirado and another individual leaving the scene. It further concluded the evidence established Tirado knowingly caused bodily injury to another with a deadly weapon, and therefore supported the conviction under Section 2502(a)(4), as Victim died from a gunshot wound. After reviewing the briefs, the certified record, and the trial court's opinion, we agree with the trial court's analysis and affirm on basis of its opinion. 1925(a) Op. at 10-11, 12-13.

Tirado next claims the Commonwealth failed to establish the Conspiracy to commit Murder conviction and the Conspiracy to commit Aggravated Assault convictions. Tirado argues the Commonwealth did not prove an agreement existed between Tirado and any other individual, noting the police did not charge anyone else in connection with the crime. Tirado also claims the Commonwealth failed to prove that there was an agreement between Tirado and another individual whose intent or purpose it was to commit Aggravated Assault, or that Tirado attempted to cause serious bodily injury.

"[T]o prove the existence of a criminal conspiracy, the Commonwealth must demonstrate that the defendant: '(1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy.'" Commonwealth v. Chambers, 188 A.3d 400, 409-10 (Pa. 2018) (quoting Commonwealth v. Rios, 684 A.2d 1025, 1030 (Pa. 1996)). "Proving the existence of such an agreement is not always easy, and is rarely

proven with direct evidence." Id. at 410 (citing Commonwealth v. Spotz, 716 A.2d 580, 592 (Pa. 1998)). The Commonwealth may prove a conspiracy "inferentially by showing the relation, conduct, or circumstances of the parties, and the overt acts of alleged co-conspirators are competent as proof that a criminal confederation has in fact been formed." Id. (quoting Commonwealth v. Kennedy, 453 A.2d 927, 930 (Pa. 1982)).

Here, the trial court concluded the Commonwealth presented sufficient evidence to support the Conspiracy to commit Murder conviction. It reasoned that Tirado and another individual were with Victim prior to the shooting, that they lured Victim onto the street, and that Tirado and the other individual were protecting items in their right front pockets, and presented evidence that Victim was dead. After reviewing the briefs, the record, and the trial court's opinion, we affirm based on the trial court's opinion. 1925(a) Op. at 9-10, 11-12, 13-14.

The trial court also rejected the challenge to the convictions for Conspiracy to commit Aggravated Assault. It reasoned the evidence established that Tirado and another individual were following Victim and lured Victim to the street, and Victim was shot and killed. After reviewing the briefs, the record, and the trial court's opinion, we affirm on the basis of the trial court's opinion. Id. at 11-12.

Tirado next argues the Commonwealth failed to present sufficient evidence to support the REAP conviction. He claims the Commonwealth

presented no evidence that he was the person responsible for causing Victim's injuries.

A person commits REAP if the person "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705; see Commonwealth v. Reynolds, 835 A.2d 720, 727 (Pa.Super. 2003).

The trial court concluded the evidence was sufficient to support the REAP conviction, reasoning Victim was lured onto the street, and shot by a man wearing a white t-shirt and gray or tan pants, and the shooting caused Victim's death. The court concluded that the evidence also established Tirado's identity as the perpetrator. After reviewing the briefs, record, and trial court's opinion, we affirm based on the trial court's opinion. 1925(a) Op. at 15.

Tirado also claims the Commonwealth failed to prove he tampered with evidence. He argues the Commonwealth failed to prove he was aware he was the subject of an official investigation, and that he attempted to, or succeeded in, concealing the pants.

The crime of tampering with evidence occurs when a person "believing that an official proceeding or investigation is pending or about to be instituted . . . alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation." 18 Pa.C.S.A. § 4910(1); see Commonwealth v. Toomer, 159 A.3d 956, 961 (Pa.Super. 2017).

Here, the trial court found the Commonwealth presented sufficient evidence to support the tampering with evidence conviction. It noted that there was evidence that police recovered from Tirado's residence a bag of trash containing the pair of tan pants matching pants that Tirado was seen wearing at the time of the crime, and that the Commonwealth presented evidence that Tirado knew, or should have known, an investigation would follow the shooting. We agree and, after reviewing the briefs, record, and trial court's opinion, we affirm on the basis of the trial court's opinion. 1925(a) at 16-17.

In the last two sections, Tirado claims the Commonwealth failed to present sufficient evidence to sustain the conviction for PIC and Possession of a Firearm Prohibited. He argues both convictions fail because the Commonwealth did not present evidence he was in possession of a weapon.

The crime of PIC occurs when a person "possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907(a). The trial court found the evidence here sufficient to meet that definition because, among other evidence, Green testified he saw Tirado place a gun back into Tirado's pocket. We agree, and, after review of the briefs, the record, and the trial court's opinion, we affirm based on the trial court's opinion. 1925(a) Op. at 17-18.

Tirado's sufficiency challenge to the Persons not to Possess a Firearm conviction does not appear in Tirado's Rule 1925(b) statement. He therefore

- 12 -

waived the claim. See Pa.R.A.P. 1925(b)(4)(vii). In any event, even if he had preserved the claim, we would conclude it lacked merit.

The statute governing Persons not to Possess a Firearm, 18 Pa.C.S.A. § 6105, provides that a person prohibited from possessing a firearm pursuant to subsection 6105(b), "within or without this Commonwealth, . . . shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S.A. § 6105.

The parties stipulated that Tirado was a minor at the time of the crime and could not lawfully possess a firearm. See 18 Pa.C.S.A. § 6110.1. Further, the Commonwealth presented evidence that Tirado possessed a firearm, including that he was supporting his pocket as though it contained a firearm, and Green saw Tirado put the firearm back in his pocket. This was sufficient to support the conviction.

In sum, we conclude the Commonwealth presented sufficient evidence to support all convictions. We therefore affirm the judgment.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2020

- 13 -

COMMONWEALTH OF PENNSYLVANIA

v.

JAQUEL SHAMON TIRADO,
Appellant

:  IN THE COURT OF COMMON PLEAS
:  OF ERIE COUNTY, PENNSYLVANIA
:
:  CRIMINAL DIVISION
:
:
:  CR 3831 of 2016
:
:  1225 WDA 2019
:

Appearances:  Emily M. Merski, Esq., for Appellant Jaquel Shamon Tirado
John H. Daneri, Erie County District Attorney, for Appellee Commonwealth
Of Pennsylvania

### 1925(a) OPINION

Domitrovich, J., October 15th, 2019

On July 30th, 2019, this Trial Court granted the request of Appellant Jaquel Shamon Tirado [hereinafter Appellant] by and through his counsel's "Supplement to Motion for Post-Conviction Collateral Relief" [hereinafter Supplemental PCRA], with no objection by the Commonwealth, to reinstate Appellant's appellate rights *nunc pro tunc*. Appellant's counsel, Emily M. Merski, Esq., on appeal raises nine (9) issues as to the sufficiency of the evidence of nine (9) of his ten (10) criminal convictions and also raises an issue as to an allegation of prosecutorial misconduct in Commonwealth's closing argument. This Trial Court provides the following procedural history:

On December 22nd, 2016, the District Attorney's Office filed a Criminal Information charging Appellant and his co-conspirators with shooting and killing Stephen Bishop [hereinafter Victim] at or near the 2000 block of Cottage Street in Erie, Pennsylvania. The District Attorney's Office filed the following criminal counts against Appellant: Criminal Homicide/Murder, in violation of 18 Pa.C.S. § 2501(a); Aggravated Assault, in violation of 18 Pa.C.S. § 2702(a)(1);

Aggravated Assault, in violation of 18 Pa.C.S. § 2702(a)(4); Recklessly Endangering Another Person, in violation of 18 Pa.C.S. § 2705; Firearms not to be carried without a License, in violation of 18 Pa.C.S. § 6106(a)(1); Possession of Firearm by a Minor, in violation of 18 Pa.C.S. §6110.1(a); Tampering with or Fabricating Physical Evidence, in violation of 18 Pa.C.S. § 4910(1); Possessing Instruments of Crime, in violation of 18 Pa.C.S. § 907(a); Criminal Conspiracy-Criminal Homicide/Murder under 18 Pa.C.S. 2501(a), in violation of 18 Pa.C.S. § 903; Criminal Conspiracy-Aggravated Assault under 18 Pa.C.S. 2702(a)(1), in violation of 18 Pa.C.S. § 903; Criminal Conspiracy-Aggravated Assault under 18 Pa.C.S. 2702(a)(4), in violation of 18 Pa.C.S. § 903; and Possession of Firearms Prohibited, in violation of 18 Pa.C.S. § 6105(a)(1).

On March 21st, 2017, Appellant, by and through his prior counsel, Nathaniel E. Strasser, Esq., filed Appellant's Petition for Writ of Habeas Corpus. On April 19th, 2017, a hearing was held on Appellant's Petition for Writ of Habeas Corpus at which time this Trial Court heard expert testimony from toolmark examination expert Corporal Dale Weimer. This Trial Court also considered the Preliminary Hearing testimony from Detective Michael Hertel of the City of Erie Police from November 18th, 2016. By Opinion and Order dated May 1st, 2017, this Trial Court concluded the Commonwealth failed to produce sufficient evidence as to the specific barrel length of the firearm used by Appellant to support the charges of Firearms Not to be Carried Without a License (18 Pa.C.S. § 6106(a)(1)) and Possession of Firearms by a Minor (18 Pa.C.S. § 6110.1(a)). Specifically, no testimony or evidence was presented regarding a specific barrel description of the handgun, nor was any testimony or evidence presented demonstrating an analysis of shell casings found at the scene was performed to determine the type of firearm used.

Thus, this Trial Court granted Appellant's Petition for Writ of Habeas Corpus to the extent this Trial Court dismissed Counts Five and Six from his Criminal Information.

After jury selection, a jury trial was held on August 1st, 2nd, and 3rd, 2017. On August 3rd, 2017, the jury returned verdicts of guilty against Appellant on all ten of the following charges: Criminal Homicide/Murder, Criminal Conspiracy/Murder of the First Degree, two counts of Aggravated Assault, two counts of Criminal Conspiracy/Aggravated Assault, Recklessly Endangering Another Person, Possession of Instruments of a Crime, Tampering Evidence, and Person Not to Possess Firearms.

On March 29th, 2018, Appellant's counsel filed a Motion for Judgment of Acquittal and/or Motion for New Trial. On April 11th, 2018, argument was held on said Motions, and by Order dated the same day, April 11th, 2018, this Trial Court directed both counsel for Appellant and Commonwealth to file Memoranda of Law on the relevant issues presented in Appellant's Motion. On May 1st, 2018, Appellant's counsel filed a Motion for Extension to File Memorandum of Law wherein counsel for Appellant indicated the court reporter needed additional time to transcribe the relevant portions of the jury trial in this matter. By Order dated May 2nd, 2018, this Trial Court granted Appellant's Motion for Extension to File Memorandum of Law. On June 4th, 2018, Appellant's counsel filed Appellant's Memorandum of Law in Support of Appellant's Post-Sentence Motion, and on June 12th, 2018, counsel for Commonwealth filed a Memorandum of Law in Opposition to Appellant's Post-Sentence Motion. Before this Trial Court issued its decision on Appellant's Motion, Appellant's counsel provided to this Trial Court the following relevant transcripts: testimony of Detective Christopher Janus [hereinafter Detective Janus] from August 1st and 3rd, 2017, and Commonwealth's closing argument from August 2nd, 2017. On July 6th, 2018, this Trial Court

issued an Opinion and Order denying Appellant's Motion for Judgment of Acquittal and/or Motion for New Trial.

On August 7th, 2018, Appellant filed a Notice of Appeal to the Pennsylvania Superior Court of this Trial Court's Post-Sentence Order dated July 6th, 2018. This Trial Court filed its 1925(b) Order on August 9th, 2018. Appellant filed his Statement of Matters Complained of on Appeal on August 29th, 2018. On December 14, 2018, the Pennsylvania Superior Court quashed Appellant's appeal for failure of defense counsel file a timely Notice of Appeal as required by Pa.R.A.P. 902.

On May 15, 2019 Appellant filed a *pro se* Post-Conviction Relief Act petition [hereinafter PCRA], alleging ineffective assistance of counsel for failure of Appellant's previous counsel to file a timely Notice of Appeal. On May 17, 2019 Attorney Willian J. Hathaway, Esq. was appointed as "PCRA counsel." On June 17, 2019, Attorney Hathaway filed Appellant's "Supplement to Motion For Post-Conviction Collateral Relief." As relevant to the instant appellate case and as explained earlier, this Trial Court granted Appellant's Supplemental PCRA on July 30, 2019 to the extent Appellant's appellate rights were restored *nunc pro tunc*. Appellant's new appellate counsel, Emily Merski, Esq. [hereinafter Appellant's Counsel], subsequently filed a timely Notice of Appeal on August 9, 2019.

This Trial Court issued its 1925(b) Order on August 9, 2019 directing Appellant's counsel to file a concise statement of matters complained on appeal within twenty-one (21) days of said date. Upon the first request of Appellant's counsel for additional time to review Appellant's record filed on August 27, 2019, this Trial Court granted her request to file her concise statement providing an additional ten (10) days. Appellant's counsel then filed a second request for additional time on September 6, 2019. This Trial Court granted this second request,

and provided an additional five (5) days for Appellant's counsel to file her concise statement. Appellant's counsel filed her "Concise Statement of the Matters Complained on Appeal" on September 11, 2019.

Appellant challenges nine (9) of his ten (10) convictions arguing Commonwealth failed to provide sufficient evidence to convict him of those charges. A claim in which the sufficiency of the evidence is challenged is a question of law. *Commonwealth v. Stahl*, 175 A.3d 301, 303 (Pa. Super. 2017) (citing *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000)). Evidence is sufficient to support a verdict if it "establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Id*. If evidence offered in support of the verdict is contradictory to the physical facts "in contravention to human experience and the laws of nature," then the evidence is insufficient as a matter of law. *Id* at 303-04. The court is required to view the evidence in the light most favorable to the "verdict winner" when reviewing a sufficiency of the evidence claim. *Id*. at 304.

Circumstantial evidence alone may be sufficient to convict. *Commonwealth v. Littlejohn*, 250 A.2d 811, 828 (1969). Circumstantial evidence is sufficient as long as the inferences arising from this evidence prove the facts in question beyond a reasonable doubt. *Id*.

To sustain a conviction for Murder of the First Degree, the jury must find beyond a reasonable doubt a victim is dead; defendant killed said victim; and did so with specific intent to kill and with malice. *Commonwealth v. Bracey*, 662 A.2d 1062, 1066 (1995). A court may infer specific intent from "the use of a deadly weapon upon a vital part of the victim's body." *Id*.

At Appellant's trial, in the instant case, Commonwealth presented evidence that when Officer Carducci arrived at the scene, Victim was "pulseless, no carotid pulse was present, bleeding profusely from the mouth." (*See* Notes of Testimony, Jury Trial, Day 2 ("N.T.2.") at pg.

38:20-24). Furthermore, Officer Carducci stated the breaths Victim was taking at the scene were not able to support his life. (N.T.2. at pg. 38:25-39:1).

Dr. Eric Vey, a forensic pathologist for twenty-five (25) years and licensed in forensic pathology having done over four thousand (4000) autopsies with approximately five hundred (500) to seven hundred fifty (750) autopsies involving fatal shootings, was qualified by this Trial Court as an expert in forensic pathology. Dr. Vey provided his expert testimony as to the cause of death of Victim, in which Dr. Vey opined and concluded Victim "died as a result of a gunshot wound to the chest, with the entrance in the left proximal arm." (N.T.2. at pg. 119:11-12). Dr. Vey further found and concluded Victim expelled blood from his mouth, and the bullet wounded a number of major organs such as Victim's left lung, brachiocephalic artery, and trachea. (N.T.2. at pg. 122:6-123:24). Dr. Vey ultimately concluded Victim's "cause of death, technically, is from bleeding to death, both internally and externally with a component of having his lungs fill up with blood." (N.T.2 at pg. 123:12-16) Dr. Vey indicated Victim drowned "in his own blood at the same time." (*Id.*) Therefore, Commonwealth presented sufficient evidence to satisfy the first element of Murder of the First Degree in that Victim is dead.

The second element is whether sufficient evidence existed to prove beyond a reasonable doubt Appellant killed the victim. *See Bracey* at 1066. While showing the video to the jury, Detective Janus narrated that the video from August 18, 2016 demonstrated Victim was walking with Appellant and two other individuals prior to the 911 call when Victim was shot. (N.T.2. at pg. 178:15-24). Detective Janus further indicated that prior to the shooting, Appellant and another individual were supporting the right pocket of their pants as if their pockets contained firearms. (N.T.2. at pg. 181:5-13, pg. 183:12-23, pg. 185:13-486:16). Eight gunshots were heard via audio recordings from the videos. (N.T.2. at pg. 194:13-195:25). Appellant and another

individual were recorded running away from the scene immediately after Victim was shot. (N.T.2. at pg. 194:13-195:25). Appellant and another individual were running from the area with their left hands free but with their right hands supporting an item in each of the right pockets of their pants. (*Id.*).

Ralph Green, a bystander witness, stated on August 18, 2016, he heard gun shots while he was sitting on his porch. (*See* Notes of Testimony, Jury Trial, Day 3 ("N.T.3.") at pg. 197:16-19). Mr. Green further noted after the gunshots, he witnessed Appellant staring back at him, placing his gun back into his pants, and proceeding to run away from the scene. (*Id.*). Furthermore, Mr. Green stated Appellant was wearing a white t-shirt and tan or grey pants on August 18, 2016, as Appellant stared back at Mr. Green. (N.T.3. at pg. 200:18-21).

Moreover, when several of the Erie City Police searched Appellant's residence following the shooting, police officers discovered white t-shirts and a pair of tan pants. (N.T. 3. at pg. 232:13-19, 237:4-23). This evidence directly corroborated statements made by Ralph Green, a bystander witness, describing Appellant's clothing earlier on August 18, 2016. (N.T.3. at 200:18-21). Appellant's pants were found in a plastic bag in his bedroom. (*See* Notes of Testimony, Jury Trial, Day 4 ("N.T.4.") at pg. 41:8-20). Allison Laneve [hereinafter Expert Laneve], Manager and Forensic Scientist for RJ Lee Group, who has testified approximately one hundred five (105) times as an expert witness, was qualified by this Trial Court as an expert witness in primer gunshot residue analysis and interpretation. Expert Laneve stated gunshot residue was found on both of these tan pants and white t-shirt which were recovered from Appellant's residence. (N.T.4. at pg. 71:1-22, 74:3-75:4). Moreover, Commonwealth's video evidence shown to the jury indicated no other individual was wearing the same clothes as Appellant wore on any of the surveillance videos from August 18, 2016. (N.T.2. at pg. 198:17-25). Therefore, Commonwealth

presented sufficient evidence to satisfy the second element of Murder of the First Degree in that Appellant killed this Victim.

For Murder of the First Degree, Commonwealth must satisfy the third element in that Appellant acted with specific intent to kill and malice. *See Bracey* at 1066. Detective Janus stated Appellant and another individual were with the Victim prior to the shooting, as evidenced by video from August 18, 2016. (N.T.2. at pg. 178:15-24). These individuals were protecting their right front pants pockets prior to the shooting of Victim as illustrated on the video displayed to the jury. (N.T.2. at pg. 181:5-13, 183:12-23, 185:13-486:16). Prior to Appellant and another man luring the Victim down Cottage Avenue, Mr. Green noted he initially saw the Victim on the sidewalk prior to hearing gunshots. (N.T.3. at pg. 199:20-23). Furthermore as stated in *Bracey*, specific intent may be inferred from use of a deadly weapon to a vital area of the victim's body. *Commonwealth v. Bracey*, 662 A.2d 1062, 1066 (1995). Dr. Vey opined and concluded the bullet wounded a number of major organs such as Victim's left lung, the brachiocephalic artery, and the trachea. (N.T.2. at pg. 122:6-123:24). Furthermore, Dr. Vey ultimately concluded Victim died from a bullet wound thereby bleeding to death, drowning in Victim's own blood. *(See N.T.2. at 123:12-16).* Specific intent to kill was inferred from Appellant's conduct and his actions and, therefore, Commonwealth presented specific evidence to satisfy the third element of Murder of the First Degree.

Contrary to argument by Appellant's counsel, Commonwealth did meet its burden of proof by sufficient evidence proving that Appellant caused the death of Victim as indicated above. Therefore, Commonwealth presented sufficient evidence to convict Appellant of Murder of the First Degree thereby satisfying all three elements of Murder of the First Degree.

As to whether Commonwealth presented sufficient evidence to sustain a conviction for Conspiracy to Commit Murder of the First Degree under 18 Pa.C.S. §903, a conviction for conspiracy requires: an unlawful agreement or an agreement to do an act in an unlawful manner, and an agreement that makes each member criminally responsible for the acts of the other members. *Commonwealth v. Tingle*, 419 A.2d 6, 10 (Pa. Super 1980). "[A] conspiracy may be inferentially established by showing the relation, conduct or circumstances of the parties, and overt acts by the conspirators have been held competent to prove that a corrupt confederation has in fact been formed." *Id.* (citing *Commonwealth v. Roux*, supra, 465 Pa. 482, 350 A.2d 867 (1976); *Commonwealth v. Kinsey*, 249 Pa. Super. 1, 8, 375 A.2d 727, 730 (1977)).

The Commonwealth must present evidence that the goal of the conspiratorial agreement was to commit first degree murder, and secondly the Appellant entered into a conspiratorial agreement. *Tingle* at 10. The overt act necessary to prove conspiracy must be done openly to accomplish the purpose of the conspiracy. *Commonwealth v. Cohen*, 199 A.2d 139, 154 (Pa.Super. 1964).

In the instant case, Commonwealth presented sufficient evidence Appellant and another individual were present with Victim in the moments prior to this shooting. (N.T.2. at pg. 178:15-24). Furthermore, Commonwealth presented sufficient evidence Appellant and another individual were walking while protecting an item in their right front pants' pockets. (N.T.2. at pg. 181:5-13, 183:12-23, 185:13-486:16). Mr. Green noted he initially saw Victim, prior to two men luring Victim down Cottage Avenue. (N.T.3. at pg. 199:20-23). It is uncontested Victim is dead achieving the goal sought by the criminal conspiracy; therefore an overt act was present to sustain Appellant's conviction. In summary, Commonwealth presented evidence from August 18, 2016 in which Appellant and another individual were following Victim, carrying firearms,

and lured Victim down Cottage Avenue moments before Victim was shot. The overt act proving conspiracy, if not the following of Victim while carrying a firearm, would be luring Victim down Cottage Avenue immediately before Appellant and another individual shot Victim. Therefore, Commonwealth presented sufficient evidence to sustain Appellant's conviction of Conspiracy to Commit Murder of the First Degree under 18 Pa.C.S. §903(a)/2501(a).

As to whether Commonwealth presented sufficient evidence to sustain a conviction for Aggravated Assault under 18 Pa.C.S. §2702(a)(1), a person is guilty of Aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." *Commonwealth v. Bullock*, 170 A.3d 1109, 1119 (Pa.Super. 2017). In order to convict Appellant of this charge, Commonwealth must have presented sufficient evidence that Appellant caused serious bodily harm to Victim and Appellant acted intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life.

Appellant possessed a firearm capable of causing bodily harm, based on statements by Detective Janus that demonstrate Appellant and another individual were protecting items in their right front pants' pockets, and Expert Laneve's opinion that gunshot residue was found on both Appellant's pants as well as inside the pocket of these same pants. (N.T.2. at pg. 181:5-13, 183:12-23, 185:13-486:16; N.T.4. at pg. 74:3-75:4). Mr. Green stated after watching Victim being lured back down Cottage Avenue, Mr. Green heard gun shots. (N.T.3. at pg. 199:20-23; N.T. 3, pg. 197:16-19). Mr. Green then witnessed Appellant placing his gun back into his pants. N.T.3. at pg. 197:16-19). Video evidence depicted to the jury that Appellant and another individual ran from the location of the shooting. (N.T.2. at pg. 194:13-195:25).

In the instant case, elements of aggravated assault are satisfied since Appellant lured Victim down Cottage Avenue intending to cause serious bodily harm to Victim by way of a firearm. Commonwealth's evidence clearly showed Appellant acted intentionally by shooting Victim, knowing the goal Appellant achieved would be death or serious bodily harm to Victim. The death of Victim constituted obvious serious bodily injury. Therefore, Commonwealth presented sufficient evidence to convict Appellant of Aggravated assault under 18 Pa.C.S. §2702(a)(1).

As to whether Commonwealth presented sufficient evidence to sustain a conviction for Conspiracy to Commit Aggravated Assault under 18 Pa.C.S. §903, a conviction for conspiracy requires: an unlawful agreement or an agreement to do an act in an unlawful manner, and an agreement that makes each member criminally responsible for the acts of the other members. *Commonwealth v. Tingle*, 419 A.2d 6, 10 (Pa. Super 1980). "[A] conspiracy may be inferentially established by showing the relation, conduct or circumstances of the parties, and overt acts by the conspirators have been held competent to prove that a corrupt confederation has in fact been formed." *Id.* (citing *Commonwealth v. Roux*, supra, 465 Pa. 482, 350 A.2d 867 (1976); *Commonwealth v. Kinsey*, 249 Pa. Super. 1, 8, 375 A.2d 727, 730 (1977)).

In the instant case, Commonwealth was required to prove a combination of two or more persons existed, with criminal motive or criminal intent, to do a criminal or unlawful act or a legal act by criminal or unlawful means. *Commonwealth v. Petrosky*, 166 A.2d 682, 688 (Pa.Super. 1960). The overt act necessary to prove conspiracy must be done openly to accomplish the purpose of the conspiracy. *Commonwealth v. Cohen*, 199 A.2d 139, 154 (Pa.Super. 1964).

Commonwealth presented sufficient evidence Appellant and another individual were following Victim on August 18, 2016 prior to the shooting. (N.T.2. at pg. 178:15-24). Furthermore, Commonwealth presented sufficient evidence Appellant and another individual were walking as portrayed on the surveillance video protecting firearm in their right front pants' pockets as testified to by Detective Janus. (N.T.2. at pg. 181:5-13, 183:12-23, 185:13-486:16). Expert Laneve noted gunshot residue (GSR) was found on Appellant's clothing items recovered from the location Appellant resided. (N.T.4. at pg.71:1-22, 74:3-75:4).

Presence of Appellant and another individual prior to the death of Victim on August 18, 2016 demonstrated the agreement between the parties to engage in conspiratorial acts. Furthermore, bystander witness testimony from Mr. Green that Appellant and another man lured Victim down Cottage Street sufficiently demonstrated Appellant and another man were engaged in the criminal act resulting in the death of Victim. (N.T.3. at pg. 199:20-23). Victim, as a result of being lured by Appellant and the other man down Cottage Avenue, is now deceased achieving Appellant's criminal goal. Therefore, Commonwealth presented sufficient evidence to convict Appellant of Conspiracy to Commit Aggravated Assault under 18 Pa.C.S. §903(a)/2702(a)(1).

As to whether Commonwealth presented sufficient evidence to sustain a conviction for Aggravated Assault under 18 Pa.C.S. §2702(a)(4), Commonwealth must have proven "attempt[] to cause or intentionally or knowingly cause[] bodily injury to another with a deadly weapon." 18 Pa.C.S. §2702(a)(4). A deadly weapon is defined as "[a]ny firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which . . . is calculated or likely to produce death or serious bodily injury." 18 Pa.C.S. §2301. To convict Appellant of this crime, Commonwealth must have presented sufficient evidence for the jury to find Appellant caused bodily injury to

another, acting intentionally or knowingly to achieve such a result, and caused such an injury or harm with a deadly weapon.

Shooting a person with a gun will cause serious bodily injury or death and Victim is now deceased as a result of gunshot wounds sustained on August 18, 2016. Commonwealth presented sufficient evidence to prove Appellant possessed a gun, a deadly weapon, on August 18, 2016, and knew and intended to cause serious bodily harm to Victim.

Contrary to Appellant's argument, Commonwealth presented sufficient GSR evidence which was found from Appellant's clothing recovered at Appellant's residence. (N.T.4. at pg.71:1-22, 74:3-75:4). Both Appellant's tan pants recovered, and Appellant's right front pants' pocket tested positive for GSR as shown by expert evidence and testimony. (*Id.*) Furthermore, gun shots were heard in the area where Victim was shot. (N.T.3. at pg. 197:16-19). Evidence also demonstrated Appellant clutched his right front pocket as if Appellant were supporting a firearm in that pocket. (N.T.2. at pg. 181:5-13, 183:12-23, 185:13-486:16). Therefore, sufficient evidence existed for this jury to convict Appellant of Aggravated Assault under 18 Pa.C.S. §2702(a)(4).

As to whether Commonwealth presented sufficient evidence to prove Appellant was guilty of Conspiracy to Commit Aggravated Assault under 18 Pa.C.S. §903, an unlawful agreement or an agreement to do an act in an unlawful manner must exist, and the agreement makes each member criminally responsible for the acts of the other members. *Commonwealth v. Tingle*, 419 A.2d 6, 10 (Pa. Super 1980). "[A] conspiracy may be inferentially established by showing the relation, conduct or circumstances of the parties, and overt acts by the conspirators have been held competent to prove that a corrupt confederation has in fact been formed." *Id.*

(citing *Commonwealth v. Roux*, supra, 465 Pa. 482, 350 A.2d 867 (1976); *Commonwealth v. Kinsey*, 249 Pa. Super. 1, 8, 375 A.2d 727, 730 (1977)).

In the instant case, Commonwealth was required to prove a combination of two or more persons existed, with criminal motive or criminal intent, to do a criminal or unlawful act or a legal act by criminal or unlawful means. *Commonwealth v. Petrosky*, 166 A.2d 682, 688 (Pa.Super. 1960). The overt act necessary to prove conspiracy must be done openly to accomplish the purpose of the conspiracy. *Commonwealth v. Cohen*, 199 A.2d 139, 154 (Pa.Super. 1964).

Commonwealth presented sufficient evidence Appellant and another individual were following Victim on August 18, 2016 prior to the shooting. (N.T.2. at pg. 178:15-24). Furthermore, Commonwealth presented the surveillance videos shown to the jury that Appellant and another individual when walking, protected items presumed to be firearms in their right front pants pockets. (N.T.2. at pg. 181:5-13, 183:12-23, 185:13-486:16). Expert Laneve stated gunshot residue (GSR) was found on Appellant's clothing items recovered from the location Appellant resided. (N.T.4. at pg.71:1-22, 74:3-75:4).

Furthermore, video surveillance illustrated Appellant and another individual immediately prior to the death of Victim on August 18, 2016 demonstrated the agreement between Appellant and another individual to engage in conspiratorial acts. Bystander witness statements from Mr. Green demonstrated Appellant and another man lured Victim down Cottage Street and were sufficient to show Appellant and another man were engaged in the criminal act resulting in the death of Victim. (N.T.3. at pg. 199:20-23). Victim, as a result of following Appellant and another man down Cottage Avenue, is now deceased achieving Appellant and the other man's criminal result. Therefore, Commonwealth satisfied proving elements of conspiracy and provided

sufficient evidence to convict Appellant of Conspiracy to Commit Aggravated Assault under 18 Pa.C.S. §903/2702(a)(4).

As to whether Commonwealth presented sufficient evidence to convict Appellant of Recklessly Endangering Another Person (REAP) under 18 Pa.C.S. 2705, "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. §2705. To convict Appellant of REAP, Commonwealth must present sufficient evidence to prove Appellant's conduct was reckless, causation, and a particular result must be reached. *Commonwealth v. Reynolds*, 835 A.2d 720, 727 (Pa.Super. 2003).

Commonwealth presented sufficient evidence through Ralph Green who saw Victim being called back down Cottage Avenue on August 18, 2016. (N.T.3. at pg. 199:20-23, pg. 201:11-25). Furthermore, Mr. Green stated he heard a series of gun shots and saw Victim who had been shot. (N.T.3. at pg. 197:16-24). Mr. Green also stated he saw a man wearing a white t-shirt and tan or grey pants place a gun into his pocket and run away. (N.T.3. at pg. 197:16-19, 198:14-18). Victim subsequently died from his wounds, achieving the goal sought by Appellant. "But for" Appellant's actions of luring Victim back down Cottage Street to be subsequently shot by Appellant, Victim would not have been seriously harmed and placed in danger of death. Appellant's actions on August 18, 2016 directly placed Victim in danger of death or serious bodily injury. Therefore, Commonwealth presented sufficient evidence to prove Appellant placed Victim in a dangerous situation resulting in serious bodily injury or death. Commonwealth sufficiently presented evidence to support the jury's finding of Appellant's guilt as to Recklessly Endangering Another Person under 18 Pa.C.S. §2705.

As to whether Commonwealth presented sufficient evidence to convict Appellant of Tampering With or Fabricating Physical Evidence under 18 Pa.C.S. §4910(1), "[a] person commits a misdemeanor of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation." 18 Pa.C.S. §4910(1). Commonwealth must have proven Appellant knew an official inquiry into the crime was pending or going to be instituted; Appellant concealed or altered the item in question; and Appellant intended the concealed item be impaired as to its verity or availability for use in the proceeding or investigation. *Commonwealth v. Toomer*, 159 A.3d 956, 961 (Pa.Super. 2017).

In the instant case, sufficient evidence was presented to the jury that a pair of tan pants were found in a garbage bag upon searching the bedroom of where Appellant was residing. (N.T.3. at pg. 232:11-19). Furthermore, other items in Appellant's gray trash bag were soiled baby diapers, balled up tissues, four potato chip bags, and a label discarded from a new article of clothing. (N.T.3. at pg. 233:22-234:4). These items were in Appellant's gray trash bag and, therefore, no longer desired by Appellant. (*Id.*). Appellant's pants discovered in this bag were subsequently tested by an expert qualified in primer gunshot residue analysis and interpretation, Expert Laneve, as to whether gunshot residue was present. Expert Laneve opined and concluded both the pants and the right front pocket of these pants tested positive for gunshot residue. (N.T.4. at pg.71:1-22, 74:3-75:4). Mr. Green stated he saw a person wearing a white t-shirt and tan or grey pants place a firearm into his right front pocket on August 18, 2016. (N.T.3. at pg. 197:16-19; 198:14-18). Commonwealth is entitled to inferences that the reason the pants were

amongst other trash was because this item was intended to be disposed of after Appellant committed this crime.

Commonwealth presented sufficient evidence Appellant knew or should have known an investigation would follow the shooting death of Victim, Appellant, with knowledge of the forthcoming investigation, intentionally placed these tan pants among other discarded items in that trash bag in an attempt to hide evidence of the shooting of Victim on August 18, 2016. Therefore, as Appellant intended to conceal this item in response to the pending investigation involving the death of Victim, Commonwealth satisfied all elements for this crime and sufficiently presented evidence to convict Appellant of Tampering With or Fabricating Physical Evidence under 18 Pa.C.S. §4910(1).

As to whether Commonwealth presented sufficient evidence to convict Appellant of Possession of an Instrument of Crime under 18 Pa.C.S. §907(a), "[a] person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S. §907(a). A conviction for this crime will be upheld if Commonwealth proves "a defendant possessed an instrument that is commonly used for criminal purposes, under circumstances not manifestly appropriate for lawful use, with the intent to employ it criminally." *Commonwealth v.* Foster, 651 A.2d 163, 165 (Pa.Super. 1994). An instrument of a crime is defined as "anything specially made . . . or adapted for criminal use," or "anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." *Commonwealth v. Eddowes*, 580 A.2d 769, 774 (Pa.Super. 1990).

In the instant case, Commonwealth presented sufficient evidence to the jury that Mr. Green, a bystander, saw Appellant place a gun into his pants pocket after Mr. Green heard

gunshots. (N.T.3. at pg. 197:16-19, 198:14-18). Mr. Green identified Appellant as the person wearing clothing identical to the clothing found at Appellant's residence. (*Id.*; *See also* N.T.3. at pg. 232:13-19, 237:4-23). Furthermore, the discarded pants recovered from Appellant's residence contained gunshot residue on both the pants and inside the right front pocket. (N.T.4. at pg. 71:1-22, 74:3-75:4). A gun, which is clearly an instrument of crime, was not used for a lawful purpose in the killing of Victim. Therefore, Commonwealth presented sufficient evidence to the jury to convict Appellant of Possession of an Instrument of Crime under 18 Pa.C.S. §907(a).

With respect to Appellant's nine (9) challenges to nine (9) of his ten (10) convictions, Commonwealth presented sufficient evidence for the jury to find Appellant guilty on the nine (9) counts, and this Trial Court requests the Pennsylvania Superior Court affirm the jury verdicts and this Trial Court for reasons as set forth above in this Opinion.

Appellant's counsel also alleges Commonwealth conducted prosecutorial misconduct in its closing argument. The case law in Pennsylvania regarding prosecutorial misconduct "is well settled [in] that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence." *Commonwealth v. Holley*, 945 A.2d 241, 250 (Pa. Super. 2008). Prosecutorial misconduct occurs only where the "unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict." *Id.* Therefore, "an allegation of prosecutorial misconduct requires [trial courts] to evaluate whether a defendant received a fair trial, not a perfect trial." *Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009). In determining whether a prosecutor engaged in

impermissible conduct during closing argument, Pennsylvania follows Section 5.8 of the American Bar Association (ABA) Standards provides the following standards:

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

*Judy*, 978 A.2d at 1019-20.

Moreover, the prosecutor may use visual aids "to assist the jury in understanding the evidence in appropriate cases, and permission to do so is within the sound discretion of the trial judge." *Commonwealth v. Rickabaugh*, 706 A.2d 826, 837 (Pa. Super. 1997) (quoting *Commonwealth v. Pelzer*, 612 A.2d 407, 412 (Pa. 1992)). Significantly, this rule "applies equally to demonstrative aids used during the actual trial phase and during the parties' opening and closing arguments." *Id.*; *see also* Pa.R.E. 1006 (a proponent of evidence may use a summary to prove the content of voluminous recordings that cannot be conveniently played in court if the originals are available to opposing parties and the court); *see also United States v. Crockett*, 49 F.3d 1357, 1360–61 (8th Cir. 1995) ("Visual aids that summarize other evidence are generally permissible pedagogic devices, especially when used to organize complex testimony or transactions for the jury."); *see also Commonwealth v. Cash*, 137 A.3d 1262, 1277 (Pa. 2016) ("[A]s with the admissibility of other types of evidence, the admissibility of a slow-motion

videotape rests within the sound discretion of the trial court, and [the Pennsylvania Supreme Court] will not reverse absent an abuse of discretion.").

The Pennsylvania Supreme Court in *Jordan* concluded the trial court did not commit an abuse of discretion in permitting Commonwealth's counsel to play a slow-motion surveillance videotape during closing argument where two videotapes were played to the jury several times during trial; the jury knew two versions of the video tape existed; the time that transpired was displayed on the slowed-down version which Commonwealth repeatedly reminded to the jury; and Commonwealth during closing argument emphasized the slowed-down portion actually encompassed only two seconds. *Commonwealth v. Jordan*, 65 A.3d 318, 330 (Pa. 2013).

Courts in other jurisdictions have concluded prosecutors are permitted to play video exhibits, including excerpts of the video exhibits, during closing arguments to the jury. *See e.g. State v. Muhammad*, 359 N.J. Super. 361, 383, 820 A.2d 70, 83 (N.J. Super. 2003) (finding no abuse of discretion in permitting the playback of video excerpts during prosecutor's closing argument since the videos "were not taken out of context and did not misstate or distort the testimony of the witnesses presented" and "were used as an aid to the prosecutor in presenting her arguments"); *see also Hodges v. State*, 194 Ga.App. 837, 392 S.E.2d 262, 263 (1990) (replay of portion of video statement during closing is not a recall of a witness but a verbatim repetition of testimony already in evidence, and trial court did not erroneously exercise discretion in permitting the video); *see also State v. Bonanno*, 373 So.2d 1284, 1292 (La.1979) ("Because the tape recorded statements were properly admitted into evidence at trial, the [trial] court did not err in allowing the state to replay the tapes during its closing argument.").

Where a defendant claimed the prosecutor presented to the jury edited tape-recorded comments during closing argument to make it appear as though defendant was confessing to

murder, the Connecticut Supreme Court held the prosecutor did not engage in prosecutorial misconduct. *State v. Skakel*, 276 Conn. 633, 888 A.2d 985 (2006). Specifically, in *Skakel*, defense counsel argued the prosecutor manipulated a tape-recorded interview of defendant with a writer for a book about defendant's life, and that by omitting certain portions of the tape, the prosecutor conveyed to the jury an unfair impression of the evidence to the jury. *Id.* at 1070. The Connecticut Supreme Court, however, concluded the presentation was not deceptive as "it was not improper for the [prosecutor] to play for the jury approximately two minutes of the defendant's tape-recorded interview . . . and to display trial exhibit photographs of the victim while the tape was being played." *Id.* at 1069. Specifically, the Connecticut Supreme Court explained in *Skakel*:

> After viewing the audiovisual presentation, we are not persuaded that there is any reasonable likelihood that the state's presentation confused the jury or prejudiced the defendant in any way. Contrary to the defendant's claim, the presentation itself was not deceptive. That presentation consisted of the written transcript of the interview . . . , *which the jury already had seen in its entirety.* . . .

*Id.* (emphasis added). Thus, the Connecticut Supreme Court in *Skakel* "reject[ed] the defendant's claim that the [prosecutor's] use of audiovisual aids during closing argument violated his right to a fair trial." *Id.*

In the instant case, Commonwealth moved for the admission of a series of unedited video recordings, which this Trial Court admitted as Commonwealth's Exhibits 36(a)-(j) without objection from counsel for Appellant. Both counsel also stipulated to the authenticity of said unedited videos. (*See* N.T.2. at pg. 10:21-11:6; 11:20-12:2). Said unedited video recordings are surveillance videos taken from various businesses near the scene of the murder. These unedited video recordings depict the actions of Appellant and his co-conspirators, as well as Victim prior to the shooting and killing of Victim and the events occurring shortly thereafter.

During Commonwealth's case-in-chief, the jury in the instant case had the opportunity to watch and hear the individual unedited video surveillance recordings of Exhibits 36(a)-(j) from different angles and different surveillance cameras while Detective Janus simultaneously narrated as to their contents. (N.T.2. at 12:14-29:11). The individual video recordings of Exhibits 36(a)-(j) were unedited so no footage was excised from any of these videos. Particularly relevant to this analysis, this jury watched and heard the contents of Video Exhibit 36(h) ("Unedited Video Exhibit 36(h)"), one of the unedited video surveillance recordings from Exhibits 36(a)-(j). Specifically, Unedited Video Exhibit 36(h) is a surveillance recording with audio obtained from the CBK Variety Store displaying, at a southwestern direction, the entrance to a parking lot of the Polish National Alliance Club ("PNA Club") and part of East 21st Street. (*See id.* at 29:12-19). According to the timestamp, Unedited Video Exhibit 36(h) shows Appellant and his co-conspirators leaving the camera's periphery at approximately 13:41:45. A period of seventy-three seconds (from 13:41:45 to 13:42:58) is a lull in activity. A series of eight gunshots are then heard starting at 13:42:58. The eighth and final gunshot is heard at 13:43:04.

At issue in this case is Commonwealth's combined video recordings in Exhibits 36(a)-(j), which consist of independent, unedited surveillance video recordings from various properties, into an edited compilation video ("Compilation Video Exhibit 38"). Commonwealth explained this Compilation Video Exhibit 38 provided an overview to the jury of the events prior to and after the shooting of Victim. As explained by Detective Janus during Commonwealth's case-in-chief, Compilation Video Exhibit 38 is composed of the following:

BY ADA LIGHTNER:

Q: So before we view this, explain what this is.

A: Basically, we have taken all of the videos that we have collected, and we have put it in order, and you'll see it through as we have seen it. Some of the areas have

been edited to make it quicker, more of a time lapse, but it would b[e] an overview from where we first started off with this original video where you'll see the victim, defendant, second individual and the individual on the bicycle when they come walking this way and running this way, to the last individual coming back. You'll see all of the angles simultaneously, like at the same time, to give an overview of the incident.

(*Id.* at 38:22-39:9).

Regarding the "time lapse" as described by Detective Janus above, Detective Janus indicated to the jury:

Q: Going to see time jump in the bottom indicating we're moving ahead?

A: Yes.

Q: Another jump now?

A: Another jump. . . .

(*Id.* at 39:10-14).

Detective Janus confirmed in the following that the Compilation Video Exhibit 38 was played in the presence of the jury during Commonwealth's case-in-chief:

Q: Okay. That's an entire compilation of the video of those individuals?

A: Yes, it is.

(*Id.* at 40:24-41:1).

Commonwealth then moved to admit Compilation Video Exhibit 38, which this Trial Court admitted with no objection from Appellant's counsel, who indicated he had previously seen the video:

ADA LIGHTNER: Couple more things, Your Honor. Now, I want to authenticate this next video with the witness. And Attorney Strasser knows this is coming, and he's viewed it. So I would ask to play that now and enter it into [] evidence as Commonwealth's 38.

THE COURT: No objection?

ATTORNEY STRASSER: No objection. I have seen that.

THE COURT: Okay.

*(Id.* at 38:11-20; *see also id.* at 41:2-8).

Later, Detective Janus further indicated to the jury that in the Unedited Video Exhibit 36(h), the seventy-three seconds of footage of lull time before the gunshots were fired were included. Detective Janus expressly noted to the jury, however, that in Compilation Video Exhibit 38, the Commonwealth had excised the seventy-three second lull:

> Q: How long do we have from them disappearing on screen until the shots that killed the victim are fired?
>
> A: Can I come over here? It would be approximately 73 seconds – or I'm sorry – 47 seconds.
>
> Q: Well, it's 41[:]45 to 42[:]58?
>
> A: I'm sorry. Yeah. I'm going in the wrong – a minute and 13 seconds.
>
> Q: Which would be the 73 seconds that you said a moment ago?
>
> A: Yes
>
> Q: And in that time, how many shots were fired?
>
> A: Eight
>
> Q: And where did you discover ballistics evidence at?
>
> A: On cottage in the 2000 block.
>
> Q: How many individuals – or how many firearms were you able to uncover evidence of?
>
> A: Two.
>
> Q: And were you able to locate any firearms on scene?
>
> A: No, I was not.
>
> Q: And were you able to locate any groups of individuals fleeing the scene?
>
> A: Yes.
>
> Q: and how many individuals were in that group?
>
> A: Two.
>
> Q: And were those individuals – well, what are they doing with their hands as they're leaving?
>
> Q: They were bent. The right arms are bent, placed in what appears to be in the front are of their pants' pockets on certain cameras, and their left hands are moving freely or swinging as they're running.
>
> Q: Okay. You said 73 seconds. Is it fair to say the video is not going to show 73 seconds?

A: **Correct.**

Q: **Because it's an edited version?**

A. **It's edited. That portion, maybe 65 or 70 seconds are cut out.**

(*See* Notes of Testimony, Day 3, ("N.T.3") Aug. 2, 2017, at pg. 157:13-159:1) (emphasis added).

The jury again viewed and heard Unedited Video Exhibit 36(h) in Commonwealth's case-in-chief when Counsel for Appellant cross-examined Detective Janus regarding events which occurred shortly before gunshots were heard:

BY ATTORNEY STRASSER:

Q: This is approximately 1341 hours, again facing in a westerly direction on the corner of 21st and Ash Streets, and there is sound on this? Can you see that, Detective Janus?

A: I can see, I guess.

Q: We're going to watch this video for a few minutes to get a time frame, because I asked Officer Stevens yesterday about the time frame from when the shots occurred to EPD responding, and it would determined (sic) that the affiant would be the best person to talk about that.

A: Okay.

. . .

Q: So we'll play that. For the record, it's 13[:]41:45. So this would be the last time that we see any of those four individuals on camera until the shooting; is that correct?

A: Yes.

Q: So that time is 13[:]41:45. I'm going to play the video. I want to stop for the gunshots, okay?

A: Okay.

Q: Can you hear what those individuals are saying?

A: I cannot, word for word, the entire sentence that individual yelled; I cannot tell you that.

Q: Thank you. Was that a gunshot in the background?

A: No.

Q: Not yet?

A: There. There was a bunch of shots.

Q: And that at 13 – first one at 13[:]42:58? Sorry. Something around there. So it's one minute past since we last saw those four individuals to when the gunshots are?

A: Approximately, yes.

Q: And I'm going to play the video again.

(N.T.3 at 41:18-42:3; 42:22-43:19).

After Appellant's trial counsel cross-examined Detective Janus, Commonwealth's counsel during redirect examination of Detective Janus again played Compilation Video Exhibit 38 without objection from Appellant's trial counsel:

ADA LIGHTNER: Your Honor, we're going to play the video again, but I think to save time, we're going to play the compilation portion, if that's okay.

MR. STRASSER: No objection to that.

(N.T.3 at 125:21-25). Thus, Compilation Video Exhibit 38 was again played to the jury during the Commonwealth's redirect examination of Detective Janus.

During closing argument, Commonwealth's counsel, ADA Burns, played Compilation Video Exhibit 38 to the jury while ADA Burns simultaneously made his closing argument. (*See* Notes of Testimony, Jury Trial, Day 4 ("N.T.4"), pg. 12:20-14:16). After the jury watched and heard Compilation Video Exhibit 38, ADA Burns repeated to the jury Commonwealth's theory as to the timeline of the murder and reminded the jury that seventy-three seconds had been excised from Compilation Video Exhibit 38:

ADA BURNS: From 13[:]41:45 until 13[:]42:58 or 73 seconds from the time the last individual goes off camera and until the time of the first shot, that's the time—that's the time—the time elapses before the first shot. And Detective Janus testified the distance from the PNA parking lot to Cottage Street is about 200 feet. So 73 seconds from the time we last see individuals in the video going westbound on East 21st, 73 seconds from then until the first shot. I would submit to you, that's plenty of time for them to go westbound on East 21st, commit the crime and come back, and then 73 seconds, we see the defendant, and lo and behold, there's the defendant and another individual running eastbound through the PNA parking lot.

(*Id* at 16:14-17:3).

In Appellant's Post-Sentence Motion, Appellant's trial counsel cited to the non-precedential case in *Commonwealth v. Jackson* as supporting authority for his claim Commonwealth intentionally presented an altered, edited version of the video to mislead the jury in Commonwealth's closing argument. *See Commonwealth v. Jackson*, 2016 WL 1382909, at *5 (Pa. Super. Apr. 7, 2016). In *Jackson*, the Pennsylvania Superior Court reviewed the prosecutor's closing argument in a murder trial wherein the prosecutor utilized a PowerPoint Presentation which had "dramatic allusions," including images of a manacle. *Id*. at *5. The Pennsylvania Superior Court in *Jackson* held Commonwealth did not engage in prosecutorial misconduct by using this PowerPoint Presentation during closing argument. *Id*. at *5. Specifically, the Pennsylvania Superior Court in *Jackson* concluded "the PowerPoint slides did not convey the prosecutor's personal belief or opinion on Jackson's credibility or guilt, did not appeal to the prejudices of the jury, and did not divert the jury from deciding the case on the evidence presented at trial." *Id*. at *6 (citing *Judy*, 978 A.2d at 1020). The Pennsylvania Superior Court in *Jackson* also indicated Commonwealth during closing argument was permitted to include "dramatic allusions" which are within the reasonable bounds of the evidence supplied at trial. *Id*.

In the instant case, similar to *Jackson*, Commonwealth's utilization of Compilation Video Exhibit 38 in closing argument did not convey ADA Burns' personal belief or opinion on Appellant's credibility or guilt to the jury but merely assisted ADA Burns with conveying to the jury the chronology of events. ADA Burns did not appeal to the prejudices of the jury since the purpose of playing Compilation Video Exhibit 38 with the seventy-three seconds excised, rather than Unedited Video Exhibit 36(h), was merely "to give an overview of the incident." (N.T.2 at 39:8-9). Commonwealth counsel's playing Compilation Video Exhibit 38 did not divert the jury

from deciding the case on the evidence presented at trial since, as noted above, Compilation Video Exhibit 38 was admitted into evidence during trial with no objection from counsel for Appellant. Unlike *Jackson*, where the PowerPoint was created for purposes of Commonwealth's closing argument, in the instant case Unedited Video Exhibit 38 was admitted into evidence in Commonwealth's case-in-chief before Commonwealth's closing argument and played several times. Thus, unlike *Jackson*, this Compilation Video Exhibit 38 was not shown to the jury for the first time during Commonwealth's closing argument. Finally, unlike *Jackson*, Compilation Video Exhibit 38 in the instant case does not contain any "dramatic allusions." In the instant case, Commonwealth merely excised seventy-three seconds of uneventful footage which is a mere lull in the video. Thus, to the extent *Jackson* applies to the instant case, *Jackson* supports the conclusion Commonwealth did not commit prosecutorial misconduct during closing argument.

Therefore, after review of all transcripts as well as an independent review of both the Unedited Video Exhibit 36(h) and the Compilation Video Exhibit 38, this Trial judge who presided over the entire trial and who reinstated Appellant's appeal rights continues to find and conclude Commonwealth's presentation of Compilation Video Exhibit 38 during closing argument did not constitute prosecutorial misconduct. The seventy-three second timeframe that transpired was repeatedly explained by Commonwealth's counsel to the jury and displayed to the jury in Unedited Video Exhibit 36(h) before Commonwealth made its closing argument. The jury was aware two versions of the videotapes existed during the entire trial, including closing argument: one version being the Unedited Video Exhibit 36(h) and one version being Compilation Video Exhibit 38. Commonwealth was transparent in both the Commonwealth's case-in-chief and closing argument by informing fully the jury that the seventy-three seconds

was excised; therefore, this jury was properly explained that these seventy-three seconds were not present in Compilation Video Exhibit 38. Consequently, ADA Burns during closing argument did not mislead nor did he impede this jury's ability to weigh the evidence objectively in order to render its true verdicts as to Appellant's guilt on all ten charges.

For the above reasons, this Trial Court respectfully requests the Pennsylvania Superior Court affirm this Trial Court's rulings and this jury's verdicts of Appellant's convictions.

BY THE COURT:

Stephanie Domitrovich, Judge

cc:    Emily M. Merski, Esq,, 509 Sassafras Street, Erie, PA 16507
John H. Daneri, District Attorney, 140 West Sixth Street, Room 506, Erie, PA 16501
Nathan E. Strasser, Esq., 821 State Street, Erie, PA 16501
Michael E. Burns, Assistant District Attorney, 140 West Sixth Street, Room 506, Erie, PA 16501
Jeremy C. Lightner, Assistant District Attorney, 140 West Sixth Street, Room 506, Erie, PA 16501
Elizabeth A. Hirz, First Assistant District Attorney, 140 West Sixth Street, Room 506, Erie, PA 16501